# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

FAMILIES A, B, C and D, on behalf of
themselves and on behalf of all Florida
families with minor children,

        *Plaintiffs*,                Case No. 4:22-cv-222-AW-MAF

v.

RON DESANTIS, as Governor of Florida;
SHEVAUN HARRIS, as Secretary of the
Florida Department of Children and Families;
JOSEPH LADAPO, M.D., as the Executive
Director of the Florida Department of Health;
PATRICIA ARMSTRONG, as the Bureau Chief
of the Florida Department of Health Child
Protection Team; and
DENNIS MOORE, as Executive Director of the
Florida Guardian ad Litem Program,

        *Defendants*.

_____/

## FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES SECRETARY SHEVAUN HARRIS, SURGEON GENERAL DR. JOSEPH A. LADAPO, M.D., PH.D, FLORIDA DEPARTMENT OF HEALTH BUREAU CHIEF PATRICIA ARMSTRONG, AND FLORIDA GUARDIAN AD LITEM EXECUTIVE DIRECTOR DENNIS MOORE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

Defendants Shevaun Harris, in her official capacity as Secretary of the Florida

Department of Children and Families ("DCF"); Dr. Joseph A. Ladapo, M.D., in his

official capacity as Florida Surgeon General and Secretary of the Florida Department

of Health ("DOH"); Patricia Armstrong, in her official capacity as the Bureau Chief

of the DOH Child Protection Team; and Dennis Moore, in his official capacity as Executive Director for the Florida Guardian ad Litem Office, file this motion to dismiss Plaintiffs' claims or, in the alternative, for a more definite statement.

## Introduction

This Complaint presents a classic example of shotgun pleading. Like a loose high-pressure fire hose gushing water into any and every direction, Plaintiffs here spew 238 paragraphs worth of grievances over 105 pages. They blame every person connected to the foster care system in Florida—state agencies, nurses, doctors, attorneys, state court dependency judges, and even the Governor of the State of Florida—for their alleged injuries. They re-allege all prior allegations throughout the Complaint, they fail to plead facts showing causation on the part of specific Defendants, and the elements of their causes of action are absent from the Complaint, as are whatever theories of recovery support Plaintiffs' claims. Plaintiffs even purport to bring claims on behalf of unknown third parties and "all Florida families with minor children." In short, the Complaint could not diverge farther from the "short and plain statement" required by Federal Rule of Civil Procedure 8(a). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Nevertheless, Plaintiffs' purported claims suffer from numerous deficiencies that warrant immediate dismissal. The Complaint seeks to collaterally attack state

court judgments in violation of the *Rooker-Feldman* doctrine. *Younger* Abstention requires dismissal where state court dependency proceedings are ongoing. Defendants have Eleventh Amendment immunity because Plaintiffs complain of state law violations and do not identify continuing violations of federal law. Defendants have absolute immunity from suit where Plaintiffs' grievances originate from the State's prosecution of child dependency cases. Further, Plaintiffs lack standing for many reasons, including that Plaintiffs have no concrete injuries in fact and that they cannot bring claims on behalf of unconnected third parties. Importantly, "the carefully enunciated and oft-repeated policy of the federal judiciary is to refuse jurisdiction of family and domestic disputes, since this area of the law belongs to the state courts." *Yow v. Crater*, 526 F. Supp. 240, (M.D.N.C. 1981) (citing *Barber v. Barber*, 62 U.S. (21 How) 582, 584 (1858); *Ex parte Burrus*, 136 U.S. 586, 594 (1890); *Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 384 (1930)). Finally, the Complaint fails to state a claim for any cause of action.

In the alternative, Plaintiffs should be required to plead a more definite statement to permit Defendants adequate notice of the claims and the grounds upon which each claim is brought.[1]

---

[1] Because Plaintiffs' Complaint is a muddle and fails to provide Defendants with adequate notice of Plaintiffs' claims, Defendants reserve the right to raise any and all arguments in the future, should Plaintiffs seek to amend their complaint.

<u>**Memorandum in Opposition**</u>

**I.**    ***The Complaint is legally insufficient and should be dismissed.***

The Complaint's 238 paragraphs are haphazardly pled, confusing, and at times, contradictory.  Nevertheless, as described below, the Complaint suffers from severe jurisdictional and other fatal defects that require dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A.    <u>The *Rooker-Feldman* Doctrine precludes Plaintiffs from using the federal courts to collaterally attack the judgments and proceedings of Florida state courts of competent jurisdiction.</u>

"[S]tate-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are prohibited by the *Rooker-Feldman* doctrine.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)).

Although "[t]he doctrine occupies 'narrow ground,'" it "does not prioritize form over substance." *Behr v. Campbell*, 8 F.4th 1206, 1209, 1211 (11th Cir. 2021). "A 'state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim.'" *Id.* at 1211 (quoting *May v. Morgan Cnty., Ga.*, 878 F.3d 1001, 1005 (11th Cir. 2017)); *see also May*, 878 F.3d at 1005 ("Pretext is not tolerated.").  Thus, a request for a ruling that the state court acted

"arbitrarily and capriciously" is treated the same as a request for the federal court to "overturn" the state court judgment—both are properly rejected for lack of subject matter jurisdiction. *See Behr*, 8 F.4d at 1210-11 (citing *Feldman*, 460 U.S. at 486).

The operative question is whether plaintiffs have pled a "'claim that at its heart challenges the state court decision itself . . . complains of injuries caused by state-court judgments and invites review and rejection of those judgments.'" *Id.* (quoting *May*, 878 F.3d at 1005). When "[t]he injury [is] caused by the [state court] judgment itself," the *Rooker-Feldman* doctrine will bar Plaintiffs' claims. *Id.* at 1212. As a relevant example, the Eleventh Circuit in *Behr* made clear that federal courts are prohibited from considering procedural due process claims made by Plaintiffs asking to review and reject state court child custody judgments. *Id.* ("The question . . . [is] whether resolution of each individual claim requires review and rejection of a state court judgment.").

Here, Plaintiffs' Complaint runs afoul of the *Rooker-Feldman* doctrine, as it requires this Court to review and reject the prior rulings of state court dependency judges. Plaintiffs seek injunctive relief and a judgment declaring "that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. 1988." (Compl., pp. 62, 73, 88, 94, 105). Those "practices" include, *inter alia*, allegations that state court judges who terminated foster children's biological parents' rights applied the wrong burdens of proof, engaged in secret *ex parte* communications, and facilitated

the "kidnap[ing]" or "snatch[ing]" of minor children. (*E.g.*, Compl., pp. 9-11, 97-98; *see also id.* p. 99 (discussing the "steal[ing of] the children from their families" and invoking Patty Hearst and Elizabeth Smart)).

Moreover, in seeking future relief, Plaintiffs urge this Court to conclude that Florida's state court dependency judges are routinely "[t]ak[en] advantage of" and have a "lack of knowledge of the foster system." (Compl., p. 9). Plaintiffs also allege that Florida's dependency court judges have a "lack of adequate education," fail to realize whether they understand the law and the facts of each case, and rule based not on the facts or the law but to avoid "bullying." (Compl., p. 97). Thus, Plaintiffs seek to use the federal court to not only reject past state court dependency judgments, but also to use those rejections to preclude any similar dependency judgments in the future. By any assessment, the *Rooker-Feldman* doctrine applies and this Court lacks subject matter jurisdiction to rule on Plaintiffs' claims.

B.  *Younger* abstention is warranted in the cases with ongoing child dependency proceedings in Florida state court.

Principles of *Younger* abstention require this Court to dismiss Plaintiffs' claims to preserve the comity between the State of Florida and the federal government. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (internal quotation marks and citation omitted). Courts apply principles of *Younger* abstention in "judicial proceedings when important state interests are involved" because they represent a "'sensitivity to the legitimate interests of both State and

National Governments.'"  *Id.* (noting that federal courts decline to adjudicate such cases "to avoid interference with state proceedings") (quoting *Younger*, 401 U.S. at 44).

*Younger* abstention applies when these three factors are present: (1) the existence of an ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) the state proceeding provides an adequate opportunity to raise constitutional challenges.  *See id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

As for the first factor, continuing state dependency proceedings qualify as ongoing state judicial proceedings.  *Id.* at 1278-79.  Without question, the Plaintiffs' desired relief would interfere with those ongoing state proceedings, as they seek to have this Court issue orders that conflict with those from state dependency court judges on matters such as child placement, visitation, and more.  *See id.*

Moreover, the fact that Plaintiffs have sued the heads of state agencies like DCF, and not the courts, does not save Plaintiffs.  "[C]ase[s] cannot be decided in a vacuum, and the potential enforcement difficulties of any order reforming such an integral aspect" of the state's dependency proceedings "would be significant."  *Id.* at 1279 n.11 (internal quotation marks and citation omitted).  Multiple courts have recognized that relief like that requested here would result in "'federal court oversight of state court operations,'" which "'even if not framed as direct review of

state court judgments, may nevertheless be problematic for *Younger* purposes.'" *Id.* at 1278 (quoting *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1271 (10th Cir. 2002)).

The second factor is satisfied because child dependency proceedings involve important state interests. *See id.* at 1275; *see also Davis v. Self*, 547 F. App'x 927, 930 (11th Cir. 2013) ("There is no doubt that matters involving domestic relations and child custody implicate important state interests.").

With regard to the third factor, Plaintiffs have failed to allege that the state dependency proceedings do not provide an adequate remedy for their federal claims. *See 31 Foster Children*, 329 F.3d at 1279 (ruling that Plaintiffs bear the burden to show a lack of an adequate remedy). Notably, this Court "'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). "'[T]he relevant question is not whether the state courts can do all that Plaintiffs wish they could, but whether the available remedies are sufficient to meet *Pennzoil*'s requirement that the remedy be adequate.'" *Id.* (quoting the district court's order).

Here, Plaintiffs have not alleged that the state courts are powerless to hear their claims. They simply do not like the decisions the state's dependency court judges make. (*See, e.g.*, Compl., pp. 9, 97 (alleging judges' "lack of knowledge" and "lack of adequate education")). But "whether a claim would likely be successful

8

on the merits in the state court is not what matters." *Davis*, 547 F. App'x at 931 (internal quotation marks and citation omitted). "Instead, what matters is whether the plaintiff is *procedurally* prevented from raising his constitutional claims in the state courts." *Id.* (internal quotation marks and citation omitted).

Although the Complaint is not clear as to many of the Plaintiffs' purported claims, Plaintiffs allege that child dependency proceedings are ongoing with the Rogers Family. (*See* Compl., p. 72 (alleging that some Plaintiffs have moved to intervene in an adoption case and another awaits a hearing on sibling visitation)). Thus, Plaintiffs have available remedies and have not shown that the opportunity to pursue those remedies is inadequate. The third factor is thus satisfied.

Nor have Plaintiffs made any allegations showing that their case should be the exception to *Younger* abstention. Their "vague and conclusory allegations that the defendants conspired to violate [their] federal rights . . . do not rise to the level necessary to justify an exception to *Younger* abstention." *Davis*, 547 F. App'x at 931 (rejecting Plaintiff's allegations because they were not "specific and plausible allegations of bad faith or harassment"); *see also Chen v. Lester*, No. 6:08-cv-1954-Orl-22GJK, 2009 WL 10698631, at *6 (M.D. Fla. Mar. 19, 2009) (dismissing claims involving state court dependency proceedings, because "the injunctive relief sought by Plaintiffs is exactly the sort of federal-court interference of state court

proceedings that the *Younger* doctrine seeks to avoid"). This Court should dismiss Plaintiffs' claims where dependency proceedings are continuing in state court.

     C.    The Eleventh Amendment bars Plaintiffs' claims.

The Eleventh Amendment states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the Eleventh Amendment bars suits against states by their citizens, although an exception under *Ex parte Young*, 209 U.S. 123 (1908), permits some suits in narrow circumstances. *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("[A] suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment."). Plaintiffs' claims, however, do not fall within this narrow exception for multiple reasons.

     1.  *This Court lacks jurisdiction over any claims that Defendants have violated Florida law.*

First, *Ex parte Young* does not authorize this Court to order state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Id.* "On the contrary, it is difficult to think of a greater

intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* ("Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *see also Thorne v. Chairperson Fla. Parole Comm'n*, 427 F. App'x 765, 769-70 (11th Cir. 2011) (affirming the district court's dismissal of plaintiffs' claims to the extent plaintiff argued that state officials had failed to follow state law).

Many of Plaintiffs' claims are based on their perception that Defendants have violated state law or state procedural rules. (*See, e.g.*, Compl., p. 9 (¶ e) (alleging violations of Florida Bar Rules and Sections 61.501-.504, Florida Statutes); p. 10 (¶ k) (complaining about violations of chapter 787, Florida Statutes); p. 11 (¶ n) (arguing Defendants ignore provisions of the Florida Rules of Juvenile Procedure and chapter 39, Florida Statutes); p. 12 (¶ p) (complaining about violations of an attorney's ethical obligations, which arise under state law); pp. 95-96 (repeating violations of various state laws and rules); p. 101 (seeking remedies for, *inter alia*, violations of state laws)). Defendants have Eleventh Amendment Immunity from Plaintiffs' claims founded upon violations of state laws or rules.

      2. *Plaintiffs' claims do not fall within the exception to Eleventh Amendment Immunity under* Ex parte Young.

Second, *Ex parte Young* requires Plaintiffs to allege ongoing violations of federal law. *See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). "*Ex parte Young* applies to

cases in which the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim." *Id.*

Here, however, Plaintiffs' Complaint is premised on the past actions of individuals, including Defendants, state court judges, and any person with whom Plaintiffs may have interacted. Plaintiffs do not and cannot allege that state court judges or caseworkers serving in a prosecutorial role are continuing to commit federal violations against them, particularly when the state court dependency judge has issued final rulings on the placement of minor children. The Complaint is unclear as to any precise ongoing federal violations that Plaintiffs allege they are facing. As Plaintiffs are not seeking a judgment that would end injuries which they experience and which are ongoing and a result of a violation of federal law, Eleventh Amendment Immunity bars their claims, and the Complaint should be dismissed.

> D. <u>Absolute Immunity bars Plaintiffs' alleged violations and relief sought involving the actions of Florida caseworkers and social workers in initiating and prosecuting dependency cases.</u>

Numerous courts have held that caseworkers and social workers who file and pursue dependency actions are entitled to absolute quasi-judicial immunity. *See, e.g.*, *Grier v. Agency for Health Care Admin.*, No. 3:04-cv-914-J-20MMH, 2005 WL 8169198, at *5 (M.D. Fla. Nov. 1, 2005) (citing *Ernst v. Child & Youth Servs. of*

*Chester Cnty.*, 108 F.3d 486 (3d Cir. 1997); *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133 (4th Cir. 1989); *Salyer v. Patrick*, 874 F.2d 374 (6th Cir. 1989)).

These courts have recognized that "the filing of a removal petition is, in essence, the start of judicial proceedings against the parent or guardian of a minor child," making "the duties of the social worker . . . those of an advocate in that process." *Vosburg*, 884 F.2d at 137; *see also Meyers v. Contra Costa Cnty. Dep't of Social Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987) (reasoning that a social worker in a dependency proceeding has some of the same responsibilities as a prosecutor in a criminal case). Moreover, the scope of this absolute immunity "is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." *Ernst*, 108 F.3d at 495 (granting child welfare workers absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings").

Here, the Complaint is founded upon Plaintiffs' allegations about the prosecutorial actions of state actors during the preparation, initiation, and prosecution of child dependency cases. Plaintiffs complain about the amount and quality of the information provided to state court dependency judges, state actors' arguments and actions during the dependency proceedings, and state actors' recommendations about the safe placement of abused children. (*See, e.g.*, Compl., pp. 8-11). Plaintiffs complain about the reasons upon which state actors elect to

initiate child dependency proceedings and the arguments these state actors make as a part of their prosecutorial responsibilities. (*See id.*). The state actors have absolute immunity for this alleged conduct.

Rather than sue the state actors directly, however, Plaintiffs have sued state officials and the heads of state agencies to whom the actors report. Their suit is still doomed. "Courts must look to the nature of 'the function performed, not the identity of the actor who performed it.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)); *see also Salyer*, 874 F.2d at 378 ("Immunity rests not on status or title but on the function performed."). Thus, Plaintiffs cannot evade absolute immunity by suing the head of a state agency rather than the caseworker when the basis of the claim is the prosecutorial function served. *See Jones*, 174 F.3d at 1282. Absolute immunity is especially appropriate when Plaintiffs' entire case is built upon "their resentment at being prosecuted" and turning that resentment "'into the ascription of improper and malicious actions to the State's advocate.'" *Vosburg*, 884 F.2d at 135 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425 (1976)).

Nor can Plaintiffs avoid absolute immunity by alleging that state actors acted with malintent. "[E]ven wrongful or malicious acts by prosecutors are allowed to go unredressed in order to prevent a flood of claims against the remainder of prosecutors performing their duties properly." *Hart v. Hodges*, 587 F.3d 1288, 1298

(11th Cir. 2009). Thus, Plaintiffs' allegations that state actors engaged in "[w]ithholding key information," "[f]abricating evidence," or even "proffering perjured, incomplete and inaccurate testimony, ignoring all the laws" (Compl., pp. 8-9, 97), do not destroy Defendants' absolute immunity. *See Hart*, 587 F.3d at 1298 (explaining that absolute immunity still applies when a "prosecutor performed that function incorrectly or even with dishonesty, such as presenting perjured testimony in court").

     E.    <u>Plaintiffs lack standing to bring their claims.</u>

Jurisdiction of the federal courts is limited by Article III's case or controversy requirements. To meet the standing requirement,

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Failure to allege facts sufficient to show standing results in dismissal of the complaint. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999).

1. *Plaintiffs lack an injury in fact because any future injury is hypothetical.*

Importantly, Plaintiffs "must allege facts from which it appears there is a substantial likelihood that [they] will suffer injury in the future." *Id.* at 1346. "Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Id.* at 1348; *31 Foster Children*, 329 F.3d at 1265 ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."). Thus, "[t]he remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985); *see Malowney*, 193 F.2d at 1347 ("There must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough.").

Notably, the Eleventh Circuit has affirmed a district court's dismissal of a claim alleging that a judge violated a juror's constitutional rights because "[t]he mere possibility that [the plaintiff] will once again be summoned, qualified, and selected to sit as a juror in a capital case before Judge Peeler and perhaps subjected to a reenactment of the scenario that occurred in this case is too remote to be labeled a controversy." *Emory*, 756 F.2d at 1552 (adding that any declaration about the judge's past conduct "would [be] nothing more than a gratuitous comment without any force or effect" (internal quotation marks and citation omitted)); *see also*

*Malowney*, 193 F.3d at 1347 (holding it was too speculative to conclude that the plaintiffs might one day be indebted to the same or different judgment creditor who would pursue a garnishment against their account); *Bradley v. Messer*, No. 3:15cv149/MCR/EMT, 2015 WL 4394220, at *5 (N.D. Fla. July 16, 2015); (possibility that plaintiff will be subject to future criminal prosecution is too remote to state a claim).

Any allegations about Plaintiffs' future injuries are just as speculative, and in some circumstances, impossible. Plaintiffs have not and cannot reasonably allege it is substantially likely they will suffer the same injuries in the future as they allege they have in the past. Rather, it is beyond highly speculative to conclude that Plaintiffs will have children removed from their custody in the future, face the same judges who (according to Plaintiffs) lack sufficient education or knowledge of Florida law, receive the same rulings, suffer the same injuries, and have their parental rights terminated. In many cases, Plaintiffs do not allege that they even have custody of minor children, making such future injuries impossible.

Nor can Plaintiffs allege it is substantially likely that they will once again be falsely accused of child abuse or that the state courts will deny any future attempts to be approved for placement (of yet-to-be-identified children). *See 31 Foster Children*, 329 F.3d at 1263, 1267 (finding multiple plaintiffs lacked standing or claims became moot after they left legal custody of the State). Because Plaintiffs

here have not alleged and cannot allege it is substantially likely they will suffer injuries in the future, the Complaint should be dismissed.

## 2. *Plaintiffs lack standing to bring claims on behalf of third parties.*

The Plaintiffs also purport to bring their claims on behalf of unknown third parties who they claim are "similarly situated" to their own personal circumstances. (*See, e.g.*, Compl., pp. 13-22; *see also id.* p. 1 (purporting to bring a claim on behalf of "all Florida families with minor children")). But individuals lack standing to bring claims on behalf of third parties with whom they have no connection. *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1041-42 (11th Cir. 2008). To bring a claim on behalf of third parties, a litigant must meet these three elements:

> [T]he litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Id.* (internal quotation marks and citation omitted).

Plaintiffs cannot meet this test because, as discussed above, they have not suffered an injury in fact. *See Aaron Private Clinic Mgmt LLC v. Berry*, 912 F.3d 1330, 1339 (11th Cir. 2019). But even if Plaintiffs had met the first element, Plaintiffs have not alleged that they are close in relation to unknown third parties or that those third parties face some hindrance to protecting their own rights. Nor could

they, as Plaintiffs could not possibly have a close relation to "all Florida families with minor children," nor could they adequately allege hindrances that impact each of those millions of families. Because Plaintiffs have not satisfied and cannot satisfy the requirements for third party standing, their claims on behalf of others must be dismissed.

F.     <u>Plaintiffs' Complaint Should Be Dismissed for Failure to State a Claim</u>.

For reasons that are further discussed in Section II below, Plaintiffs' Complaint is a shotgun pleading that renders it impossible for Defendants to understand and adequately defend against Plaintiffs' claims. Complaints like the one in this case are subject to dismissal for failure to state a claim where they are full of vague and conclusory allegations. *See, e.g.*, *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Complaints must consist of "most than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678; *see also Gayton v. Atlas Copco N. Am., LLC*, No. 1:15-CV-1339-VEH, 2015 WL 7273005, at *3-4 (N.D. Ala. Nov. 18, 2015) (dismissing the Complaint, in part, because Plaintiff "impermissibly . . . lumped <u>all</u> of her claims . . . against <u>all</u> defendants into one solitary count . . . instead of dividing her complaint into separately numbered counts asserted against each specific defendant").

The Complaint here fails to set forth the elements of each of Plaintiffs' causes of action, identify the specific actions that underly Plaintiffs' theory of the case for

each cause of action, and describe the actions of each Defendant in causing Plaintiffs' injuries for each cause of action. This is particularly critical in the present circumstances, where the Complaint lists "claims" and "counts" that are brought by all Plaintiffs against all Defendants and all allegations are incorporated into subsequent "counts." Plaintiffs include no factual allegations mentioning how the DOH or GAL Defendants caused any injury to many of the Plaintiff Families, and in fact, Plaintiffs praise the actions of GAL Defendants in the Mitchell Family. (*See, e.g.*, Compl., ¶ 186). Defendants are unclear which actions Plaintiffs attribute to DCF, DOH, or GAL. Moreover, Defendants are unable to determine what defenses and affirmative defenses may be available to them. As but one example, federal and Florida law sets forth specific timeframes on how much time a Plaintiff has to bring his or her claims, and many of Plaintiffs' complained about actions may in fact be time-barred.

Without knowing the specific actions of Defendant which may have caused Plaintiffs' alleged injuries, Defendants are unable to mount a defense that would challenge the sufficiency of Plaintiffs' factual allegations for each claim under Rule 12(b)(6) or identify their defenses and affirmative defenses. The Complaint lacks sufficient clarity to provide this Court with an element-by-element failure to state a claim analysis. Nevertheless, Defendants request this Court dismiss the Complaint for failure to state a claim and raise this argument now in effort to preserve the right

to file a more detailed Rule 12(b)(6) motion to dismiss in the future should Plaintiffs amend their Complaint.

**II.** ***In the alternative, this Court should require Plaintiffs to provide a more definite statement under Rule 12(e).***

Plaintiffs must be required to replead their Complaint, as it is the quintessential shotgun pleading. In fact, the Complaint commits all four "sins" typical of shotgun pleadings: (1) "the mortal sin of re-alleging all preceding counts"; (2) "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) "the sin of not separating into a different count each cause of action of claim for relief"; and (4) "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015).

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. This lack of adequate notice is so objectionable that district courts are required to strike shotgun pleadings *sua sponte* if defendants fail to move for a more definite statement. *Id.* at 1321 n.10. Here, the Complaint should be dismissed and

Plaintiffs required to replead their claims so that Defendants have the adequate notice to which they are entitled.

A.      The Complaint impermissibly re-alleges all preceding counts.

"The most common type" of shotgun pleading is one "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. This practice "lead[s] to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

"By the time a reader of the pleading gets to the final count, it is exceedingly difficult, if not impossible, to know which allegations pertain to that count (according to its label), to separate the wheat from the chaff." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) (noting that "shotgun pleadings unnecessarily tax the [Court's] time and resources"); *see also Strategic Income Fund*, 305 F.3d at 1295 (describing sifting through the allegations as "quite onerous"). Thus, adopting all prior allegations and preceding counts is an unforgivable "mortal sin" that requires repleading of the entire complaint. *Weiland*, 792 F.3d at 1321-22 & n.11.

This Complaint spans 105 pages, containing 238 paragraphs, but only four "counts" and two "claims." The "counts" appear to reference each Plaintiff Family, and the two "claims" brought by Plaintiff Families are substantive due process and procedural due process. "Each Plaintiff Family realleges their respective allegations" for each of the two claims. (Compl., pp. 94, 96). Thus, the second claim contains all the of the preceding allegations before it, including those in the first claim and the other 208 paragraphs that make up the Complaint. The "counts" and "claims" thus "contain irrelevant factual allegations and legal conclusions," *Strategic Income Fund*, 305 F.3d at 1295, even within each Plaintiff Family's situation, and Plaintiffs improperly expect Defendants to wade through 238 paragraphs of allegations to try to understand Plaintiffs' suit.

The Complaint is anything but the "short and plain statement" required by Federal Rules of Civil Procedure 8(a). *See also Ashcroft*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 555. Plaintiffs fail to plead in an organized manner and instead incorporate all preceding allegations into every cause of action, and as such, the Complaint must be re-pled.

B.   The Complaint is filled with conclusory, vague, and immaterial facts that are not obviously connected to the causes of action.

The second type of shotgun pleading is one that commits the "sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. This type of complaint is

"so disorganized and ambiguous that it is almost impossible to discern precisely what it is that [plaintiffs] are claiming." *Cramer v. State of Fla.*, 117 F.3d 1258, 1261 (11th Cir. 1997). When plaintiffs file confusing and conclusory complaints, "it is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of the litigation" or else the complaints will "impede the orderly, efficient, and economic disposition of disputes." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

Here, the "reader of the complaint must speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (noting that the complaint was structured very similar to the one here, with dozens of numbered paragraphs of factual allegations prior to the counts, which consisted of only two paragraphs each). When "[m]any of the factual allegations appear to relate to only one or two counts, or to none of the counts at all," the complaint must be re-pled. *Id.*

The Complaint here presents a litany of "disorganized and ambiguous" allegations. For example, Plaintiffs complain about various perceived wrongs and slights with no indication as to which may be actionable. (*See, e.g.*, Compl., pp. 62, 73, 88, 94, 105 (seeking an injunction to prevent "each of the unlawful practices set forth" in the Complaint, without identifying which grievances are unlawful wrongs).

The Complaint alleges violations of federal and state law in conclusory fashion without identifying those laws. Plaintiffs make fantastical and conclusory allegations, such as their allegations that Florida's dependency judges have a "lack of knowledge of the foster system" and a "lack of adequate education." (Compl., pp. 9, 97). The Complaint also goes into great detail about a myriad of facts that do not appear to relate to any of the counts. (*See, e.g.*, Compl., pp. 93-94 (alleging harassment from state workers and violations of Free Speech rights, even though the Complaint contains no causes of action related to such purported facts).

In addition, for many Plaintiffs, it is unclear the basis on which they are bringing their claims. (*See, e.g.*, Compl., p. 19 (Milton and Melanie Murphy are mentioned only once in the Complaint, yet they purport to bring a claim on their own behalf without explanation)). It is also unclear how Plaintiffs purport to represent "all Florida families with minor children," (Compl., p. 1), or how some Plaintiffs plan to bring claims on behalf of people who live in other states with no connection to Plaintiffs or their circumstances, (Compl., p. 17). In sum, the allegations are "conclusory, vague, and immaterial," requiring a new complaint.

  C. <u>The Complaint fails to separate each cause of action into a different count</u>.

The third type of shotgun pleading commits "the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323.

In such cases, complaints present "untold causes of action, all bunched together in one count." *Id.* at 1323 n.13 (internal quotation marks and citation omitted).

The Federal Rules of Civil Procedure require each claim to be set forth in numbered paragraphs and "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Thus, the Rules and the courts require "separate, discrete causes of action [to] be ple[]d in separate counts." *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (criticizing one of plaintiffs' counts that appeared to have pled "at least nine discrete theories of recovery"). Indeed, plaintiffs are required to "set forth . . . the elements of these separate causes of action [and] the facts underpinning them" instead of making "a reader of the pleading . . . discern these things for himself." *Id.* Thus, a complaint is properly rejected where it sets forth "in one count, every act, [regardless of which defendant committed the act], which, in the pleader's mind, may have had a causal relationship to the [injury]." *Weiland*, 792 F.3d at 1323 n.13 (internal quotation marks and citation omitted; brackets in original).

Plaintiffs' Complaint suffers from these infirmities. About 18 Plaintiffs have bunched up hundreds of factual allegations involving, *inter alia*, uneducated state court judges, misstated burdens of proof, missing or withheld information, secret *ex parte* communications, abusive family members, kidnapped children, denials of relative placement, flawed family home studies, improper family investigations,

perjured testimony, unethical attorney behavior, the refusal to follow unidentified laws and procedures, an inability to participate in certain state court dependency proceedings, and more, all into two counts, leaving it for Defendants and this Court to try to guess all the theories of relief on which Plaintiffs might base their substantive and procedural due process claims.  Because Plaintiffs have violated Rule 10(b), the Complaint cannot stand.

D.  <u>The Complaint fails to specify which defendants are responsible for the complained of acts or omissions.</u>

Finally, Plaintiffs also commit "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.  Plaintiffs err when they make general allegations about numerous defendants "engag[ing] in certain conduct, making no distinction among the . . . defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Here, Plaintiffs often refer to employees and agents of DCF, DOH, and GAL jointly, as "Defendant Foster System Operators," *see* Compl., p. 4 (¶ 7)—without specifying which of the Defendants caused any of the harms about which Plaintiffs complain.  Nor does the Complaint specify which Plaintiffs are bringing which claims against which Defendant or identify the basis upon which each of the

Defendants is responsible for Plaintiffs' alleged injuries. Based on the different roles that even Plaintiffs acknowledge Defendants serve, it is clear that all Defendants did not cause every harm mentioned in the Complaint. Plaintiffs have lobbed 238 paragraphs of allegations against all Defendants like a cook throws spaghetti at the wall, without any specificity, or even coherent organization, and this Court should require Plaintiffs to replead their Complaint.

## Conclusion

Because of the above-discussed jurisdictional and other fatal defects, this Court should dismiss the Complaint. In the alternative, because the Complaint is a classic case of shotgun pleading, this Court should require Plaintiffs to plead a more definite statement.

Dated this 15th day of August, 2022.

W. Eugene Gandy
Florida Bar No. 858218
Florida Department of Health
Office of the General Counsel
4052 Bald Cypress Way, Bin A-02
Tallahassee, Florida 32399
(850) 245-4005
Email: william.gandy@flhealth.gov
Secondary Email:
nikkisha.asbey@flhealth.gov

*Attorney for Defendants Surgeon General and DOH Secretary Joseph Ladapo and DOH Bureau Chief Patricia Armstrong*

Respectfully submitted,

*/s/George N. Meros, Jr.*
**Jason Gonzalez**
Florida Bar No.:146854
**Benjamin J. Gibson**
Florida Bar No.: 58661
**George N. Meros, Jr.**
Florida Bar No.: 263321
**Tara R. Price**
Florida Bar No.: 98073
**Shutts & Bowen LLP**
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
Telephone: 850-241-1717
Email: jasongonzalez@shutts.com
Email: bgibson@shutts.com
Email: gmeros@shutts.com
Email: tprice@shutts.com
Secondary email: chill@shutts.com
Secondary email: mmontanaro@shutts.com

*Attorneys for Defendants DCF Secretary Shevaun Harris, Surgeon General and DOH Secretary Joseph Ladapo, DOH Bureau Chief Patricia Armstrong, and GAL Executive Director Dennis Moore*

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of August 2022, a copy of the foregoing was filed through CM/ECF, with electronic service on counsel for all parties of record.

*/s/George N. Meros, Jr.*
Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this computer-generated motion complies with the font requirements mandated under N.D. Fla. Local Rule 7.1(F) and contains 6,573 words.

*/s/George N. Meros, Jr.*
Attorney