# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FAMILIES A through V,**

    Plaintiffs,

       **v.**　　　　　　　　　　　　　　　　**Case No. 2022 CV 222**

**RON DESANTIS, as Governor of Florida;**
**SHEVAUN HARRIS, as Secretary of the**
**Florida Department of Children and Families;**
**JOSEPH LADAPO, M.D., as the Executive**
**Director of the Florida Department of Health;**
**PATRICIA ARMSTRONG, as the Bureau Chief**
**of the Florida Department of Health Child**
**Protection Team; and**
**DENNIS MOORE, as Executive Director of the**
**Florida Guardian ad Litem Program,**

    Defendants.

## <u>PLAINTIFFS' AMENDED COMPLAINT</u>

Plaintiff FAMILIES A through V sue Defendants RON DESANTIS, as Governor of Florida [Governor], SHEVAUN HARRIS, as Secretary of the Department of Children and Families [DCF], JOSEPH LADAPO, M.D., as the Executive Director of the Florida Department of Health, [DOH], PATRICIA ARMSTRONG, as the Bureau Chief of the Florida Department of Health Children's Medical Services and the Child Protection Team [CMS

or CPT], and DENNIS MOORE, as Executive Director of the Florida Guardian ad Litem Program [GAL] within the Statewide GAL Office, and allege:

## I.     STATEMENT OF THE CASE

1.      Defendants' operation of the foster care system in Florida deprives Plaintiffs of rights secured by the United States Constitution and federal laws that are enforceable in this Court.

2.      Defendants have deprived Plaintiffs of their First and Fourteenth Amendment rights and rights secured by 42 U.S.C. §§ 671(a) *et seq* and 675a(a)(1).

3.      The deprivation of rights alleged herein involve three major components of Defendants' state plan for foster care: relative placement; sibling visitation; and injunctive orders.

4.      Defendants operate Florida's foster care system with customs, policies, or practices of: not placing removed children with appropriate relative caregivers; depriving children of sibling placement or visitation; and obtaining injunctions against parents without notice or an opportunity to be heard or injunctions that constitute prior restraints on speech.

5.     Plaintiffs are: parents or relatives of children who have been removed from their parents or are currently facing removal (Category 1 Plaintiffs); parents or relatives of removed siblings who have not been placed together or, when placement of the siblings together is impossible, who have been deprived or are currently facing the deprivation of visitation with a sibling (Category 2 Plaintiffs); and parents of children who have been removed or face removal and have been enjoined or face injunctions without due process or that constitute prior restraints on speech.

6.     When a child is removed from his or her biological parents Federal law requires that Defendants perform a diligent search for relatives and that priority be given to relative caregivers.

7.     When a removed child has a sibling, Federal law requires that Defendants operate the foster care system with a plan which places siblings together or, when placement together does not occur, includes regular sibling visitation.

8.     After removal of the children, Defendants have a policy or custom of improperly pursuing injunctions as a part of their operation of the foster care system. Defendants obtain injunctions without notice to the parents or an opportunity to be head. The injunctions prohibit contact with

children or discussion of Defendants' actions. Defendants use of such injunctions deprives Plaintiffs of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

9.     Plaintiffs bring claims under 42 U.S.C. §1983 for the deprivation of rights secured by the Constitution and federal law.

10.    Defendants deprived the Category 1 Plaintiffs of rights secured by 42 U.S.C. §§671(a) *et seq* and 675a(a)(1).

11.     42 U.S.C. §671(a) states, "In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—"

- "provides that the plan shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them;" 42 U.S.C. §671(a)(3).

- "provides - for the establishment or designation of a State authority or authorities that shall be responsible for establishing and maintaining standards for foster family homes and child care institutions which are reasonably in accord with recommended standards of national organizations concerned with standards for the institutions or homes, including

standards related to admission policies, safety, sanitation, and protection of civil rights, and which shall permit use of the reasonable and prudent parenting standard; 42 U.S.C. §671(a)(10)(A).

- "provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards." 42 U.S.C. § 671(a)(19).

- "provides that, within 30 days after the removal of a child from the custody of the parent or parents of the child, the State shall exercise due diligence to identify and provide notice to the following relatives: all adult grandparents, all parents of a sibling of the child, where such parent has legal custody of such sibling, and other adult relatives of the child (including any other adult relatives suggested by the parents), subject to exceptions due to family or domestic violence, that--

- **(A)** specifies that the child has been or is being removed from the custody of the parent or parents of the child;

- **(B)** explains the options the relative has under Federal, State, and local law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice;

- **(C)** describes the requirements under paragraph (10) of this subsection to become a foster family home and the additional services and supports that are available for children placed in such a home;" 42 U.S.C.§ 671(a)(29).

12.    42 U.S.C. § 675a states in relevant part, "(a)**(1) Documentation of intensive, ongoing, unsuccessful efforts for family placement:** At each permanency hearing held with respect to the child, the State agency documents the intensive, ongoing, and, as of the date of the hearing, unsuccessful efforts made by the State agency to return the child home or secure a placement for the child with a fit and willing relative (including adult siblings), a legal guardian, or an adoptive parent, including through efforts that utilize search technology (including social media) to find biological family members for the children." 42 U.S.C. § 675a(a)(1).

13.    Defendants deprived the Category 2 Plaintiffs of rights secured by 42 USC § 671(a)(31).

14.     42 U.S.C. §671(a) states, "In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which— **(31)** provides that reasonable efforts shall be made-- **(A)** to place siblings removed from their home in the same foster care, kinship guardianship, or adoptive placement, unless the State documents that such a joint placement would be contrary to the safety or well-being of any of the siblings; and **(B)** in the case of siblings removed from their home who are not so jointly placed, to provide for frequent visitation or other ongoing interaction between the siblings, unless that State documents that frequent visitation or other ongoing interaction would be contrary to the safety or well-being of any of the siblings;".

15.     Defendants deprived the Category 3 Plaintiffs of rights secured by the First and Fourteenth Amendment.

16.     The First Amendment states in relevant part that "Congress shall make no law … abridging the freedom of speech." The First Amendment is applicable to Defendants' acts and omissions in this case through the Due Process Clause of the Fourteenth Amendment.

17.     The Fourteenth Amendment, Section 1 states in relevant part that "No state shall … deprive any person of life, liberty, or property, without due process of law;".

18.     This case presents an actual controversy between the parties. Plaintiffs have been harmed by Defendants' operation of the foster care system. Plaintiffs would benefit from the injunctive and declaratory relief sought herein. Defendants' deprivations of Plaintiffs' rights are ongoing.

19.     Defendants' deprivation of Constitutional rights is redressable in this Court pursuant to 42 U.S.C. §1983.

20.     Congress intended that the statutory provisions in question benefit Plaintiffs. The rights protected by the statutes are not so vague and amorphous that enforcement would strain judicial competence. The statutes unambiguously impose binding obligations on Defendants. In other words, the provisions giving rise to the rights addressed herein are couched in mandatory rather than precatory terms.

## II.     JURISDICTION AND VENUE

21.     Jurisdiction is invoked pursuant to 28 U.S.C §§1331 and 1343 in that this is a civil action arising under 42 U.S.C. §1983 to redress the Defendants' deprivation under color of law of the federal rights, privileges

and immunities secured to the relatives and children involved in the Florida foster system by the Constitution and laws of the United States. The federal rights sought to be redressed are guaranteed by the First and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202, as Plaintiffs seek declaratory and injunctive relief prohibiting: (1) the unlawful separation of children from their relatives and the unlawful internal diversion of foster children from available relatives to system-connected nonrelatives[1]; (2) the wrongful separation of siblings from each other and the wrongful, aggravating failure to provide separated siblings sufficient visitation to maintain and strengthen the siblings' bonds; (3) ex parte injunctions against familial association absent compliance with constitutionally mandated procedural due process requirements of notice and an opportunity to be heard; and (4) entry and enforcement of injunctions constituting prior restraint of speech contrary to constitutionally protected free speech rights guaranteed by the First Amendment.

---

[1] Examples of system-connected nonrelatives to whom some of the children from the Plaintiff Families were "internally diverted" include a lead agency Board Member and trustee in Clay County, a lead agency Board member in Alachua County, a licensed foster parent couple of whom one was a volunteer with the GAL Program, the other provided mandatory comprehensive behavioral health assessments [CBHA's] of foster children for the lead agency, a behavioral health specialist employee of a lead agency, and a social worker serving as a case manager and a friend of a child protective investigator affiliated with DCF.

22.    Venue lies in Leon County, Florida pursuant to 28 U.S.C. §1391(b), as Plaintiffs' claims arise out of their relationship with the Defendants, who operate the Florida foster care system throughout the state; and a majority if not all of the Defendant officials have their place of business in Leon County, Florida, which is located in the Northern District of Florida, Tallahassee Division.

## III. <u>INTRODUCTORY STATEMENT</u>

23.    At all times material, each of the agencies, departments, divisions, and bureaus involved in the operation of the Florida foster care system are part of Florida's executive branch. Florida's Governor is the executive responsible for oversight and operation of the foster care system. The Governor is responsible for making sure the foster care system is operated in accordance with federal law, and this is a condition of Florida's continuing receipt of federal funds for the operation of Florida's foster care system.

24.    At all times material, the Governor is responsible for making sure, among other things, that the federally protected rights of the children and their relatives involved in the foster care system are respected and enforced, and are not trampled, violated, or ignored.

25.     This case involves the Florida foster care system, part of which is funded by Florida taxpayers, while the federal government funds the balance. The numbers for 2018 (the most recent available) show the federal government providing funds equaling some 61% [$776,840,104] of the $1,295,069,665 total, with state and local funding for the balance.

26.     Under federal law, the purpose of the foster care system is to provide for the care, safety, and wellbeing of minor children in Florida, with their families to be engaged in constructive, supportive, and non-adversarial relationships, with as little intrusion into the life of the family as possible.

27.     Florida law vests DCF, under the authority and control of the Governor, with the obligation and responsibility to oversee and provide for the operation of the foster care system including licensing of non-medical foster parents and case handling of foster cases. DCF's child protective investigators also directly handle initial investigations with the CPT team [housed within the Department of Health's Children's Medical Services Bureau] and provides attorneys through the DCF legal services unit [CLS] to represent the State of Florida in dependency case.

28.     Under the direction of the Governor, DCF contracts with private lead agencies to operate the foster system in the various DCF regions of the state.

29.     Also, under direction of the Governor, the GAL Office provides administrative staff to represent volunteer guardians available to be assigned to make sure the rights and best interests of children in the foster care system are being protected.

30.     Also, under direction of the Governor, the Department of Health has a number of divisions, including Children's Medical Services, which licenses medical foster parents and is responsible for the child protection teams, which work with DCF during child protective investigations. DOH/CMS have direct operational and contractual control of all CPT units within the state.

31.     When the Defendant Foster System Operators [DCF, CPT and, GAL] under the Governor's control believe that a child's safety warrants immediate removal from the Birth Parents, at times the Birth Parents are asked to participate in a case plan to improve their ability to safely parent children, and the Defendant Foster System Operators have a duty under

federal law to locate relative caregivers to care for the children during the case plan phase of the dependency case.

32.     Federal law requires the giving of notice [within 30 days of a child's removal] to relatives, including all adult grandparents, all parents of a sibling of the child where such parent has legal custody of such sibling and other adult relatives of the child, including any other adult relatives suggested by the parents, subject only to exceptions due to family or domestic violence 42 U.S.C. §671(a)(29).

33.     Only if there are no suitable, willing, available relatives, is it appropriate for the children sheltered from their Birth Parents to be placed with nonrelative strangers.

34.     When there are concerns for the safety of children, parents can be monitored as they comply with services to complete their system-supervised case plans, with successful completion allowing reunification with the Birth Parents of their sheltered children.

35.     Federal law mandates that Florida's foster care system place siblings together and, if that cannot or does not happen, mandates that Foster System Operators provide for frequent visitation 42 U.S.C. §671(a)(31).

36.     When Foster System Officials believe the facts and safety concerns warrant the immediate filing of a petition to expedite termination of the Birth Parents' parental rights, the system must, at the adjudicatory hearing [trial] meet the stringent requirements set forth in *Santosky v. Kramer,* 455 U.S. 745 (1982) (to terminate parents' fundamental rights to parent their children, the state must demonstrate by clear and convincing evidence that the parents abused or neglected the child and that the abuse or neglect harmed the child) and must demonstrate the absence of any less restrictive action that can protect the child. Discovery rules applicable in TPR cases are based on constitutionally protected due process considerations and reflect the expectation that foster system officials will provide Birth Parents and the supervising dependency court judge not only factual evidence that will be relied upon at trial, but also evidence that is exculpatory for the accused parents, similar to the *Brady v. Maryland,* 373 U.S. 83 (1963), burden of providing all relevant information.

37.     When removing a child, or when TPR is deemed appropriate and parental rights are ended, Foster System Officials are obligated - as a matter of federal law – to locate and notify the child's relatives about adoption rights  and provide permanency for the child with available, safe relatives,

in recognition of the fact that children who cannot be safely returned to Birth Parents do better and have better short and long term outcomes when placed with relatives, rather than nonrelative and, in some cases, system-connected strangers.

38.     Federal law prohibits inappropriate interference with familial rights, especially when Foster System Operators engage in conflicts of interest, self-dealing and breaches of fiduciary duties to attempt to divert or take children from their biological families to nonrelative system-connected chosen ones.

39.     In some cases, Florida's Foster System Serves as an "Internal Diversion" system, taking and keeping children from families and relatives and letting Foster System Connected Staff take them.

40.     This suit addresses the failure of the Defendants to follow federal laws relating to children in Florida and their biological relatives who have enforceable federal rights with those children. Defendants' operation of the foster care system deprives Plaintiffs of those rights and ignores both the rights of children to be with relatives and that failing to do so results in disproportionate, negative, and long-term impacts on the health of those removed children.

41. This suit seeks injunctive relief against Defendants, who in some cases use the foster care system to identify and take children away from biological kin and addresses the unlawful "internal diversion" practices of Defendants in which operators of the system essentially have their choice of the minor children placed into the state's foster care system, interfering with the children's relationships with their families.

42. Plaintiffs also seek declaratory relief condemning as unlawful and enjoining the unlawful internal diversion practices the Defendant Foster System Operators have been practicing, choosing either to ignore suitable relatives so they can effectuate the internal diversions and takings, or choosing to ignore the ongoing duty to diligently search for relatives until they find relatives suitable to raise the foster child.

43. To operate the system for internal diversion of children, Foster System Operators executing their responsibilities [including DCF, CPT, the GAL and DCF's contracted lead agencies] use a number of artifices and devices, and other outright unlawful actions, including, but not limited to:

    a. Withholding key information from the Birth Parents, other relatives, and their attorneys about conflicts of interest between case managers and the interests of the children and their

families, when system-connected personnel have unilaterally and improperly decided to push to end the parents' rights and let the children be adopted by system-connected personnel, despite the laws and facts providing otherwise;

b. Failing to conduct the requisite diligent searches for biological relatives of the child and failing to give the required 30-day notice to all grandparents, all parents of a sibling of the child where such parent has legal custody of such sibling, and other adult relatives of the child, including any adult relatives suggested by the Birth Parents when a child is sheltered, throughout the case, and again, as required after a TPR judgement e.g., 42 U.S.C.S. §§671(a)(19) and 671(a)(29);

c. Choosing a nonrelative system-connected person for placement of a child instead of complying with federal law and placing the child with relatives;

d. Having the lead agency [and, at times, a subcontracted case management agency] work with DCF to divert children to favored non-relatives, rather than conducting the required diligent searches for relatives;

e. Ignoring the due process rights of Birth Parents and other Relatives to be present with advance notice of judicial review proceedings, and blocking Relatives from being heard in dependency court proceedings;

f. Ignoring the *Santosky v. Kramer, supra* burden on Foster System Operators to prove the alleged abuse by the clear and convincing evidence standard, and improperly attempting to shift the burden of proof to Birth Parents and their attorneys to explain reasons for a child's condition;

g. Compromising the ethical obligations of the attorneys for Birth Parents or other relatives by paying the attorney for system-connected services inconsistent with the attorney's obligations to his or her clients, and withholding information about the system-connected payments from the Birth Parents and other relatives represented by the attorney accepting payment from the foster system operators; and

h. Ignoring known relatives or fabricating false reports of abuse attributed to a relative to justify failing to approve a relative for

placement while attempting to place a child with a system-connected non-relative.

44.     When relatives [who realized how their related youngsters had been internally diverted] complained to the Governor, he and or his designees took no independent action other than to redirect the complaints to DCF or the other Foster System Operators themselves to handle, with no accountability or redress for the relatives of the diverted children who had been improperly kept from their relatives.

45.     When the Governor's Foster System Operators created false reports or took other inappropriate action to disqualify a relative from DCF's consideration for temporary or permanent placement of a child, the Foster System Operators withheld from the victim of their fabrication of reports information available  as to how the wrongfully disqualified relative could get the erroneous information corrected and removed, and get their names removed from  the registry of abusers on which they had improperly been listed.

### IV.     PLAINTIFF FAMILIES
### Plaintiff Family A - The Williamses[2]
### Snapshot of the Williams Family

46.     The Williams Family includes many relatives on both of the Birth Parents' sides, including many in Florida and other states. Birth Mother

---

[2]  The adult Williamses prefer to use their actual names. The minors' will be referred to as, Lil R., R.W. and T.W.

Taniyah Crutch-Williams had local relatives in the North Florida area in 2017 who included the children's maternal grandparents Lisa Crutch and Donald Crutch, three aunts and their families, and two siblings and their families, with additional aunts and uncles in the Tampa area. Other maternal relatives are in New York.

47.     Birth Father Rodney Williams, Jr.'s local relatives in the North Florida area in 2017 included the children's paternal-great grandmother, the children's paternal grandparents and paternal uncle and aunt.

48.     The adult members on both sides of the families are strongly middle or upper-class people, involved in businesses of their own or honorably working for others, many served in the military, all with honor, many obtained four- or two-year college degrees. The family members, including a number of additional maternal relatives in New York, stay in close contact with each other.

## Closer Look at the Williams Family

49.     Taniyah Crutch-Williams and her husband Rodney Williams, Jr. are the Plaintiff Williams Birth Parents. The Williams Birth Parents have three biological children: Lil R.W., III ("Lil R.", DOB 2015), R.W. (DOB 2017) and T.W. (DOB 2020). They bring this action on behalf of themselves

individually and as the victims of the Defendant Governor's wrongful taking of their rights to parent Lil R. and R.W., and as the natural guardian of T.W., whose First Amendment sibling associational rights have been wrongly interfered with; they also bring this action on behalf of other parents whose children were wrongly removed by Foster System Operators.

50.    The maternal biological grandparents of the three biological Williams children are Lisa Crutch and the late Donald Crutch. Maternal biological grandmother Lisa Crutch brings this action individually with respect to her associational rights with her grandchildren being wrongly interfered with, and with respect to the Defendant Foster System Operators falsely placing her name on the child abuse registry to disqualify her from serving as a relative caregiver for her grandchildren Lil R. and R.W. following the children's removal from Birth Parents in August 2017.

51.    The paternal biological grandparents of the three biological Williams children are Charlotte Williams and Rodney Williams, Sr. They bring this action individually and as legal guardians of their adoptive son Lil R. [who, with the termination of the Birth Parents' rights to parent Lil R. and R.W., also became the legal brother of their biological adult son Rodney Williams, Jr.].

## Plaintiff Family B – The Rogers Family[3]

52.     The Rogers Family Plaintiffs include David Rogers and his wife Charlotte Rogers, individually and as legal guardian of their Florida-born adoptive daughter Alexandra R. (DOB 2015).

53.     Alexandra has a full sibling brother [birth initials M.S. DOB 2017) born in Florida and taken into foster care on May 11, 2017.

54.     The Rogers Plaintiffs are residents of North Carolina and bring this action on behalf of themselves and as legal guardian of their adoptive daughter for the violation of their familial legal and associational rights with Alexandra's full-blooded brother, and of Alexandra's constitutionally protected familial associational rights with her full sibling.

## Plaintiff Family C - The Mitchells[4]

55.     The extended Mitchell Family includes many maternal relatives of Regan's in Florida during the time following her birth in 2015, including great, great aunt Kathy Gomez, great aunts April Maxwell and Dale Felton and their families, and grandfather Pedro Morgan and his minor daughter.

---

[3] The name "Rogers" selected for this Plaintiff Family is a pseudonym to protect the Rogers Family Plaintiffs as the adoptive parents of a child identified by pseudonym, Alexandra R.

[4] The surname "Mitchell" is a pseudonym to protect the privacy of the relative minor child internally diverted from the Mitchells; the Mitchells' minor child relative will be referred to by a pseudonym, Regan M, her siblings by pseudonyms Alicia M. and Chelsea D.

There were numerous other maternal relatives in Massachusetts, including great aunt Kendall Mitchell [background in preventing childhood abuse and trauma, early childhood education, raised three daughters, all college educated], in addition to the Birth Fathers of Regan's two half-sisters, Chelsea D. and Alicia M. Spencer DaCosta is the Birth Father of Chelsea D; his then-fiancé/now wife Anna DaCosta is a nurse. All family members have solid family values and would have passed a properly administered home study, and all were willing and available to raise Regan if the family placements with the Florida relative families did not work out.

56.     The extended Mitchell Family consists of numerous relatives of the minor child Regan M. (DOB 2015). Those involved as Plaintiffs here include maternal great aunt Kendall Mitchell, who applied to, and who was approved to, adopt Regan.

57.     Regan has two half siblings, Alicia M. (DOB 2010) and Chelsea D. (DOB 2014); all three sisters share the same Birth Mother.  Spencer and Anna DaCosta bring this action individually and as the natural and legal guardians of daughter Chelsea D. Milton Murphy and Melanie Murphy bring this action individually and as the natural and legal guardian of daughter Alicia M.

58.     With her own two children, great aunt April Maxwell and her partner Marcus Diamond served as relative caregivers for Regan for more than two years. They bring this action for themselves individually and as natural and legal guardians of their two minor children Everett M. (DOB 2005) and Hilarie M. (DOB 2006), as relative caregivers from whom the foster system-connected folks diverted a minor child, after presenting the dependency court with erroneous information about them, and improperly and incorrectly telling Plaintiff Diamond he had no right to come to court or to be heard.

59.     Great aunt Dale Felton and great uncle Slade Felton and their children Jaclyn [2010] and Laurel F. [2013] also served as relative caregivers for Regan, with the children having a sibling type relationship before Regan was improperly and prematurely diverted from their home to be taken by nonrelative system-connected personnel. They bring this action on behalf of themselves individually and as natural guardians of their two minor children.

60.     Regan M.'s biological grandfather Pedro Morgan brings this action individually and on behalf of his minor daughter Karla M. (DOB

2004), who for more than a year, had a sibling relationship with her biological niece Regan.

## Plaintiff Family D – The Budloves[5]

61.     The Budlove Family Plaintiffs include the Plaintiff Birth Mother Brittany Budlove and her biological daughter, T.B. [DOB 2019], maternal grandmother Judy Miller [retired owner/operator of a McDonald's, moved to Florida to be near the Birth Mother and grandchild T.B.], maternal aunt Chauntina Kern [in-home healthcare worker for nine years], maternal aunt Kiesha Kern [truck driver for metals company for more than ten years], maternal uncle Gregory Nunley [has worked at Tootsie Roll Factory in Chicago for 20 years], maternal great uncle Dr. Richard Nunley [teacher for Chicago Public School system for nearly 40 years, [maternal great aunt Felicia Nunley [elementary school teacher for more than 20 years], maternal cousin Dr. Danielle Nunley [pharmacist/pharmacy manager], and maternal cousin Simone Wilson [licensed therapist and clinical social worker for more than seven years].

---

[5] The Birth Mother and her relatives have chosen to use the actual names of the adult Plaintiffs, with the actual first name of the child

62.     The maternal relatives are all willing, available, and appropriate to care for T.B.

63.     The Birth Parents were divorced in February 2021; the Birth Father is not involved.

64.     Of eight maternal relatives, many of whom initially had their home studies approved, the Defendant Foster System Operators have nevertheless chosen thus far to exclude them as caregivers for their relative T.B. so that a nonrelative system-connected custodian can have T.B.

65.     The maternal relatives named personally reached out to the assigned case management and their agency and were rebuffed and or purposely misguided regarding their request to obtain custody of their young family member.

66.     The Birth Mother Plaintiff brings this action individually and on behalf of the wrongful deprivation of familial associational rights with T.B.

## Plaintiff Families E – V

67.     Many families have been impacted by Defendants' operation of the foster care system in Florida. Plaintiffs, Taylar Point and Fredrick Benton (Family E), are paternal aunt and uncle to two girls impacted by Defendants' operation of Florida's foster care system. Both girls were removed from their

parents in Duval County. Neither Ms. Point nor Mr. Benton were notified about the removal of their nieces until approximately seven months later and after she was placed with non-relatives in a foster home. Ms. Point and Mr. Benton were able ultimately to adopt one of their nieces, born into care after the first, but not her sister. In addition to Defendants' failure to notify Ms. Point and Mr. Benton in accordance with Florida law, Defendants deprived the sisters of sibling placement and visitation.

68. Curt Houston, Sr. (Family F) is the grandfather of two children in the foster care system. The children were removed from their biological father after their mother passed away. Mr. Houston did not receive the required notification. His grandchildren have been placed in a nonrelative's home. ON information and belief, the placement of the grandchildren was a part of Florida's illegal internal diversion program.

69. Esmeralda Arroyo (Family G) is the paternal grandmother of three grandchildren in the foster care system. The children were removed from their biological parents. Ms. Arroyo did not receive the required notification. Her grandchildren have been placed in a nonrelative foster home in violation of federal law.

70. Jennifer and Douglass Cooke (Family H) are the maternal aunt and uncle to their nephew who was taken into Defendants' custody in Flagler County. Initially, their nephew was placed with Mr. and Mrs. Cooke. However, Defendants removed their nephew from their custody and control without cause and in violation of federal law placed their nephew first briefly with a relative, and subsequently in a non-relative foster home. When the child shortly thereafter went into foster care, the Cooke's were not reached out to to be considered for placement nor adoption.

71. Constance and Charles Zittin (Family I) are grandparents of a child taken into Defendants' custody in Clay County. While their grandchild had previously lived with them, Defendants refused to consider placement with them upon removal from his parents, without cause and in violation of federal law placed their grandchild in a non-relative home.

72. In addition to the families introduced above, numerous other families have been and continue to be impacted by Defendants' operation of the foster care system in Florida. Those additional families and family members are identified below, and the categorization of their claims are included.

73.     The following Plaintiffs are pursuing the following categories of claims:

- Category One: In addition to the Williams Family, Rogers Family, Mitchell Family, and Budlove Family (Families A – D respectively), Taylar Point and Fredrick Benton (Family E), the Houston Family (Family F), the Arroyo Family (Family G), the Cooke Family (Family H), the Zittin Family (Family I), Melina Markos-Turk (Family J), Karen L. McGuire (Family K), Shicora Denise Bennett (Family L), Angeline Petiti-Homme Lopez (Family M), Kathleen Nixon (Family N), Sandra Phillips (Family O), Leon Zatar (Family P), Nicole Snell (Family Q), La'Jade Symone Evans (Family R), Ashley Rosenberg (Family S), Rielma Bejerano (Family T), Gretchen Hanson (Family U), and Trena Robinson (Family V) have all been and continue to be impacted by Defendants' operation of the foster care system in violation of  42 U.S.C. §§671(a) *et seq* and 675a(a)(1).

- Category Two: Families A, B, C, E, G, J, and Q have been and continue to be impacted by Defendants' operation of the foster care system in violation of 42 USC § 671(a)(31).

- <u>Category Three</u>: Families A, D, and R have been impacted by Defendants' operation of the foster care system in violation of the First and Fourteenth Amendments to the United States Constitution.

## V. <u>DEFENDANTS</u>

### A. <u>Defendant Governor DeSantis</u>

74. Defendant DeSantis is the Governor of the State of Florida, the head of the executive branch of Florida's government and the person responsible for the proper operation of the foster care system, including the portions of the system operated by the Florida Department of Children and Families [DCF], the Children's Medical Services [CMS] and Child Protection Team [CPT]. By law Defendant Governor is responsible for the proper administration of DCF, assuring DCF operates in conformity with State and federal law and in compliance with the agreement with the federal government under, <u>inter alia</u>, the Adoption and Safe Families Act and the Family First Prevention Services Act of 2018, which parallels Florida legislative changes adopted in 2018.

75. Defendant DeSantis is sued in his official capacity.

76.     As executive officer of Florida, the Defendant Governor is responsible not only for the hiring and continued employment of Shevaun Harris, Secretary of DCF and of Joseph Ladapo as Executive Director of DOH, but also to make sure that CMS/CPT Bureau Chief Armstrong and the CPT personnel are not abusing their positions.

77.     Defendant DeSantis is also responsible for seeing that the Florida foster system operates consistently with federal law and is responsible for ensuring DCF protects the federally protected civil rights of foster children and their biological families by ensuring that once children are removed from their biological parents, they are placed with biological family members if they cannot be safely returned to their Birth Parents.

78.     Defendant DeSantis is also responsible for making sure that the Foster System Operators do not provide perjured testimony or inaccurate information to the children's Birth Parent and other relatives, or to the attorneys for the Family members to the dependency courts, do not withhold pertinent information, or mislead the court about applicable law, and to make sure those operating Florida's foster system follow the law, rather than ignoring it to unlawfully separate foster children from their relatives so they can be placed with nonrelative system-connected personnel.

79.     Since Defendant DeSantis assumed office in January 2019, he has

overseen the operations of Florida's foster care system and tolerated actions

taken by the other foster system-connected Defendants in a manner contrary

to federal law, needlessly exposing the removed children and their families

to violations of law likely to subject them to long-term health consequences.

## B.      Defendant Shevaun Harris

80.     Defendant Shevaun Harris is sued in her official capacity as

Secretary of the Florida Department of Children and Families [DCF].

Defendant Harris is the Florida foster system official responsible for the

proper operation of the foster care system in the state of Florida, a system

operated in accordance with federal and state law, for which the federal

government provides more than 60% of the annual funding to operate the

system.

81.     Federal law requires Florida [and, in accepting federal funds, the

State of Florida agreed] to diligently search for biological family members

for the placement of children in their legal custody, providing priority to

family members for temporary and permanent placements, prior to

placement with either a licensed foster care home or placement with non-

relatives in a non-licensed home.

82. As a matter of Florida public policy and law, federal lawmakers and Florida's Legislature have found that, as acknowledged by social workers and case managers, foster children do better when placed with biological relatives, rather than nonrelative strangers; even DCF's own policies, procedures and Florida's Administrative Code provisions reflect DCF's recognition of the importance and requirement for contact between children removed from their families and their biological relatives.

## C. **Defendant Dennis Moore**

83. Defendant Dennis Moore is sued in his official capacity as executive director of The Guardian ad Litem Program of Florida [GAL], a Florida program which is tasked with advocating for the best interest of children in the foster care system. GAL was designed as an advocate for children removed from their families, to promote and protect sibling contact, provide a safety net and oversight for the needs of children to assure case plan, therapeutic and medical services are provided to the children in the foster care system as well as ensure compliance with federal law.

## D. **Defendant Ladapo**

84. Defendant Ladapo, M.D. is sued in his official capacity as the executive director [formerly called Secretary] of the Florida Department of

Health, the department charged with providing medical foster care and other health services in the foster care system through Children's Medical Services [CMS] and the Child Protection Team [CPT]. CMS provides direct medical services and coordinates medical services for children in the foster care system, especially for children designated as children with medical needs. CPT is a bureau within DOH that conducts forensic evaluations and medical evaluations of children after reports of abuse after abuse investigations are initiated through the Florida Abuse Hotline; each district's regional CPT office has a medical director to oversee allegations of abuse and neglect, to determine if a child has injuries attributable to abuse or neglect, rather than a medical or other condition not attributable to abuse or neglect, and to ensure compliance with federal law.

### E. **Defendant Pamela Armstrong**

85.    Defendant Armstrong is sued in her official capacity as Bureau Chief of CPT and CMS. She is responsible to make sure CPT personnel conduct their assessments properly and in accordance with applicable protocols for each office's Medical Director and Nurse Practitioner and federal law. CMS provides direct medical services and coordinates medical

services for children in the foster care system, especially for children designated as children with medical needs.

## VI. CAUSES OF ACTION

### COUNT I

### VIOLATION OF FAMILIAL ASSOCIATIONAL RIGHTS AND PRIORITIZATION AND NOTIFICATION OF RELATIVES AS SET FORTH IN 42 U.S.C. §671(a)(19) and (a)(29) AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

86.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 85 above as if set forth herein in full.

87.     At all relevant times, the State of Florida accepted payments under Title IV-E of the federal Social Security Act, known as the Child Welfare Act or Adoption Assistance and Child Welfare Act, 42 U.S.C. § 671.

88.     Under the Act, federal law requires that the State "consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards," 42 U.S.C. § 671(a)(19).

89.     Furthermore, federal law provides that, "within 30 days after the removal of a child from the custody of the parent or parents of the child, the State shall exercise due diligence to identify and provide notice to the

following relatives: all adult grandparents, all parents of a sibling of the child, where such parent has legal custody of such sibling, and other adult relatives of the child (including any other adult relatives suggested by the parents) . . ." 42 U.S.C. § 671(a)(29).

90.     These laws recognize that each Family with a child removed by the foster system has a First Amendment familial associational right to maintain contact with their family members, consistent with the First Amendment and the federal laws prioritizing the right of family members to be considered for placement, 42 U.S. C. § 671(a)(19), and consistent with the federal mandate that state foster systems give notice to all pertinent relatives, 42 U.S.C. §671(a)(29).

91.     These federal statutes and the First Amendment authorize an individually enforceable right under Title 42 U.S.C. § 1983 because Congress intended the above provisions to benefit the Plaintiffs, the asserted rights are clear and direct as to their enforcement; and the above statutes unambiguously impose a binding obligation on the States.

92.     The Foster System Defendants have denied certain Plaintiff Families their constitutionally protected familial associational rights and

rights under federal law intended to protect the health and well-being of children removed into the system by *inter alia:*

a. failing to conduct the requisite diligent searches for biological relatives of the child;

b. failing to give the required 30-day notice to all grandparents, all parents of a sibling of the child where such parent has legal custody of such sibling, and other adult relatives of the child, including any adult relatives suggested by the Birth Parents when a child is sheltered, throughout the case, and again, as required after a TPR judgement, e.g. 42. U.S.C.S. §§671(a)(19) and 671(a)(29);

c. purposefully choosing non-relative system-connected persons for placement of a child instead of complying with federal law and placing the child with relatives, when qualified relatives were readily available; and

d. having the lead agency [and, at times, a subcontracted case management agency] work with DCF to divert children to favored non-relatives, rather than conducting the federally required diligent searches for relatives.

93. In addition to the Williams Family, Rogers Family, Mitchell Family, and Budlove Family (Families A – D respectively), Taylar Point and Fredrick Benton (Family E), the Houston Family (Family F), the Arroyo Family (Family G), the Cooke Family (Family H), the Zittin Family (Family I), Melina Markos-Turk (Family J), Karen L. McGuire (Family K), Shicora Denise Bennett (Family L), Angeline Petiti-Homme Lopez (Family M), Kathleen Nixon (Family N), Sandra Phillips (Family O), Leon Zatar (Family P), Nicole Snell (Family Q), La'Jade Symone Evans (Family R), Ashley Rosenberg (Family S), Rielam Bejerano (Family T), Gretchen Hanson (Family U), and Trena Robinson (Family V) have all been impacted by Defendants' operation of the foster care system in violations of 42 U.S.C. §§671(a) et seq and 675a(a)(1).

## COUNT II

**VIOLATION OF SIBLING ASSOCIATIONAL RIGHTS AND MANDATORY REQUIREMENTS OF PLACEMENT OF CHILDREN WITH SIBLINGS OR, IF NOT POSSIBLE, MEANINGFUL VISITATION AS SET FORTH IN 42 U.S.C. §671(a)(31) AND THE FIRST AMENDMENT OF THE <u>UNITED STATES CONSTITUTION</u>**

94. Plaintiffs repeat the allegations set forth in paragraphs 1 through 85 above as if set forth herein in full.

95.     At all relevant times, the State of Florida accepted payments under Title IV-E of the federal Social Security Act, known as the Child Welfare Act or Adoption Assistance and Child Welfare Act, 42 U.S.C. § 671.

96.     Under the Act, federal law requires that the State make reasonable efforts "(A) to place siblings removed from their home in the same foster care, kinship guardianship, or adoptive placement, unless the State documents that such a joint placement would be contrary to the safety or well-being of any of the siblings . . . " 42 U.S.C. § 671(a)(31)(A).

97.     In cases in which the siblings cannot be jointly placed, federal law requires that the State allow "for frequent visitation or other ongoing interaction between the siblings, unless that State documents that frequent visitation or other ongoing interaction would be contrary to the safety or well-being of any of the siblings." 42 U.S.C. § 671(a)(31)(B).

98.     These federal statutes recognize that siblings removed from their Birth Parents have a First Amendment sibling associational right to be placed with their siblings, and, where that is not possible, to have  frequent enough visitation and contact so that their relationships and bonding are maintained and strengthened.42 U.S.C. §671(a)(31).

99. These requirements were intended to allow for enough contact or visitations so that the siblings' relationships and bonding are maintained and strengthened.

100. These federal statutes and the First Amendment authorize an individually enforceable right under Title 42 U.S.C. § 1983 because Congress intended the above provisions to benefit the Plaintiffs, the asserted rights are clear and direct as to their enforcement; and the above statutes unambiguously impose a binding obligation on the States.

101. The Foster System Defendants have denied these sibling association rights by:

a. systematically and purposefully failing to make any effort to place siblings within the same placements in order to place children with the Defendants' favored non-relatives; and

b. systematically failing to allow for sibling visitation in order to severe ties with separately placed siblings.

102. Families A, B, C, E, G, J, and Q have been impacted by Defendants' operation of the foster care system in violation of 42 USC § 671(a)(31).

**COUNT III**

**VIOLATION OF CONSTITUTIONAL DUE PROCESS REQUIREMENTS FOR NOTICE AND AN OPPORTUNITY TO BE HEARD REGARDING EX PARTE INJUNCTIONS INTERFERING WITH PROTECTED ASSOCIATIONAL RIGHTS AND IMPROPERLY IMPOSING PRIOR RESTRAINT OF PROTECTED FIRST AMENDMENT SPEECH**

103. Plaintiffs repeat the allegations set forth in paragraphs 1 through 85 above as if set forth herein in full.

104. At all relevant times, the State of Florida accepted payments under Title IV-E of the federal Social Security Act, known as the Child Welfare Act or Adoption Assistance and Child Welfare Act, 42 U.S.C. § 671.

105. The Foster System Defendants improperly ignored the constitutional due process requirements under the Fourteenth Amendment for notice and an opportunity to be heard by obtaining injunctions against some Plaintiffs having contact with family members without proper notice or any opportunity to be heard, and the injunctions obtained amounted to an improper restraint of free speech.

106. The Plaintiff Families subjected to improper injunctions, without notice or an opportunity to be heard, prior restraints on speech, and related punishments, including imprisonment, are: (a) the Williams Family; (b)the

Budlove Family; and (c) the Evans Family. Families A, D, and R have been impacted by Defendants' operation of the foster care system in violation of the First and Fourteenth Amendments to the United States Constitution.

## VII. REMEDY AT LAW INADEQUATE

107.   Defendant Foster System Operators wrongly ignore their obligations to proactively and diligently search for family to serve as temporary and permanent caregivers for their relative minor children, instead ignoring their duties to find safe, suitable, willing Relatives, then arguing later that children have bonded to the stranger, non-relatives, and suggesting to the court that it is not fair to move the children to relatives as a sanction for the unlawful job performance and system misfeasance and malfeasance.

108.   The policies, practices, abuses of power, acts and omissions of Defendant Foster System Operators constitute actions contrary to the best interests of the children taken into the system and steal the children from their families illegally and unconstitutionally, violating *inter alia* the Fourteenth Amendment to the Constitution of the United States.

109. Each day that the Defendant Foster System Operators delay their compliance with controlling laws, the children and their Families are damaged.

110. These Plaintiff Families will continue to be irreparably injured by the Defendants' policies, practices, acts, and omissions until and unless this Court grants the injunctive relief requested.

111. With each day that the Defendants delay their compliance with the law, continue their unlawful custody of Florida children whose Birth Parents have been wrongly or unfairly targeted, Florida Families are being harmed and losing valuable rights for which there is no adequate remedy at law for damages and can only request this Court to immediately order the Defendants to stop their unlawful child taking and their wrongful internal diversion activities and to immediately begin complying with the provisions of federal foster care system laws. Florida families with children are at risk of their children being targeted and taken by the Defendant Governor and the other Foster System Defendants.

## VIII. **RELIEF REQUESTED**

112. Plaintiff Families request the Court to declare unlawful the Defendants' policies and practices of ignoring Florida and federal foster care

laws and depriving Plaintiffs of their due process rights by Defendants'
unlawful child diversions, presenting incomplete evidence, withholding
evidence from the Court and Birth Parents, other family members and their
attorneys, preventing dependency court proceedings from being fair and
impartial, and wrongly preventing the access of relatives to receive
information and be present at hearings relating to children targeted by the
Foster System Defendants.

113. Plaintiff Families further request the Court to provide temporary
injunctive relief and a permanent injunction requiring the Defendants to
operate the foster care system in accordance with the state and federal laws
in effect, and to stop ignoring the procedural and substantive due process
rights of Florida's Children and their Birth Parents and other relatives.

114. The injunction should immediately stop, the current practice of
wrongful child taking and internal diversion from relatives to system-
connected nonrelatives.

115. .The injunction must stop, immediately, the Defendant Foster
System Operators' practice of allowing children to be placed with system-
connected nonrelatives, unless and until Foster System Operators provide
accurate information documenting that a proper family finding search has

been completed, with the diligent search demonstrating that there are no suitable, willing available relatives to be caregivers for sheltered children.

116.    The injunction should prohibit CPT from having their unsupervised or improperly supervised nurse practitioners seeing if they can find children to target for child takings and internal diversions so that system-connected nonrelative personnel can acquire children who should be with relatives, and who would be with relatives if the foster system officials complied with their diligent search requirements to find safe relative caregivers when children cannot safely be returned to the Birth Parents from whom they are being taken.

117.    Defendant Foster System Operators should be required to immediately and promptly provide dependency judges and Birth Parents and other relatives with potentially exculpatory evidence not offered at trial.

118.    Defendant Foster System Operators should be prohibited from fabricating false reports in order to try to disqualify relatives as caregivers, and the Defendant Foster System Operators should be required to immediately provide any relative disqualified from serving as a relative caregiver the information needed to correct the errors in the system-fabricated reports.

119. Defendant Foster System Operators should be prohibited from separating siblings from each other.

120. Defendant Foster System Operators should be required to make sure that siblings are allowed direct contact with each other, that visitation be granted when sibling placement is not possible, and that grandparents and other adult relatives are given notice of their right to an evidentiary hearing on their right to visit their grandchildren.

121. The injunction should require Defendant Foster System Operators to promptly correct false statements in home studies, and to remove those whom they listed on the abuse registry to remove the falsely labeled persons from the registry, and to delete, and not use again, the false statements, including those relating to Lisa Crutch and Simone Wilson.

122. The injunction should require all attorneys acting on behalf of the Florida foster care system to submit an affidavit on personal knowledge certifying the facts in each case with out of state relatives of children in state foster care, to timely demonstrate Florida's compliance, at the time of shelter and the first hearing after a TPR judgement, with diligent search, family finding, and the notice and hearing requirements mandated by federal law.

WHEREORE Plaintiffs demand judgement against Defendants and pray for the following relief:

a. A preliminary and permanent injunction against Defendants and its directors, officers, agents, employees and representatives and in and all persons acting in concert with them from engaging in each of the unlawful practices set forth herein;

b. A declaratory judgement that the practices complained of in this Complaint are unconstitutional and violate federal law;

c. The entry of an order assessing Plaintiffs' costs and reasonable attorney's fees against the Defendants pursuant to 42 U.S. C. § 1988; and

d. Such further relief as the Court deems appropriate.

Dated this 16th day of September, 2022.

/s/ *Karen Gievers*
**Karen Gievers, Esq**.,
Florida Bar No.: 262005
P.O. Box 16459
Tallahassee, Florida 32317
PH: 850.570.0425
Kgievers@karengievers.com

*And*

/s/ Octavia Brown

**Octavia Brown, Esq**.,
Community Law for Families
and Children, PLLC
Florida Bar No.: 0011778
**Valentina Villalobos, Esq.,**
Community Law for Families and
Children, PLLC
Florida Bar No.: 100426
3104 N. Armenia Avenue, STE 2
Tampa, Florida 33607
PH: 813.822.3522
FAX: 863.250.8228
Octavia.brown@community-lawyer.com
Valentina.villalobos@community-
lawyer.com
*And*

/s/ Aaron Rapier
**Aaron Rapier, Esq.,**
Rapier Law Firm
*Admitted Pro Hac Vice*
Illinois Bar No. 6270472
1770 Park Street, Suite 200
Napierville, Illinois 60563
PH: 630.853.9224
arapier@rapierlawfirm.com

*Trial Attorneys for Plaintiffs*