## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FAMILIES A through V,**

    **Plaintiffs,**

**v.**                                                    **Case No. 4:22-cv-222-AW-MAF**

**RON DESANTIS, as Governor of
Florida; SHEVAUN HARRIS, as
Secretary of the Florida Department of
Children and Families; et al.,**

    **Defendants.**

_____/

## ORDER GRANTING MOTIONS TO DISMISS

Certain children and families have sued Florida's Governor, the Secretary of Florida's Department of Children and Families, and other state officials. According to Plaintiffs' First Amended Complaint (ECF No. 24, "FAC"), Florida's foster-care system is deficient in many ways, and Florida's foster-care agencies routinely violate federal statutes and the United States Constitution. More specifically, Plaintiffs allege that "Defendants operate Florida's foster care system with customs, policies, or practices of: not placing removed children with appropriate relative caregivers; depriving children of sibling placement or visitation; and obtaining injunctions against parents without notice or an opportunity to be heard or injunctions that constitute prior restraints on speech." FAC ¶ 4.

1

Defendants moved to dismiss. The Governor filed one motion, asserting Eleventh Amendment immunity and lack of standing. ECF No. 28 at 2. The remaining state defendants filed a separate motion. ECF No. 27. They argue Plaintiffs' complaint is an impermissible shotgun pleading, that the court lacks subject-matter jurisdiction, and that Plaintiffs failed to state valid claims in Counts I and II because they rely on federal statutes that do not confer enforceable rights. *Id.* at 2.

The court held a hearing and heard argument from all parties. At the hearing's conclusion, I ruled that the First Amended Complaint would be dismissed as a shotgun pleading but that Plaintiffs would have an opportunity to amend. (Plaintiffs indicated they will amend.) I also ruled that the Governor had Eleventh Amendment immunity. This order further expands on those rulings and sets some guardrails for Plaintiffs' forthcoming Second Amended Complaint.

## I.   THE GOVERNOR HAS ELEVENTH AMENDMENT IMMUNITY.

The Governor asserts Eleventh Amendment immunity, contending he is not a proper *Ex parte Young* defendant.[1] The Eleventh Amendment generally precludes

---

[1] The remaining defendants raised the Eleventh Amendment too. ECF No. 27 at 9-11. They correctly argue that the Eleventh Amendment precludes consideration of any state-law claims against them, *id.* at 9, but Plaintiffs have disclaimed any state-law claims here, ECF No. 32 at 31 n.2. To the extent the Agency Defendants also argue that the *Ex parte Young* exception is inapplicable, they do so based on their contention that Plaintiffs have alleged no ongoing harm—no threat of future

suits against States in federal court. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). And a suit against the Governor in his official capacity is generally a suit against the State for Eleventh Amendment purposes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The *Ex parte Young* exception, though, allows plaintiffs to sue a state official in his official capacity notwithstanding the Eleventh Amendment, provided they seek only prospective relief. This is based on the "legal fiction" that such a suit "is not a suit against the state." *Grizzle*, 634 F.3d at 1319. Plaintiffs contend they may proceed under this exception.

The problem for Plaintiffs is that a proper *Ex parte Young* defendant is one who is "'responsible for' a challenged action and [has] 'some connection' to the unconstitutional action at issue." *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (quoting *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988)). Here, Plaintiffs contend that the Governor is responsible for the challenged actions because he has control over Florida's foster-care operators. Plaintiffs point to their allegation that under the Governor's direction, "DCF contracts with private lead agencies," some of which "diverted children in foster care

---

injury. But this makes their *Ex parte Young* argument coextensive with their Article III standing arguments, which I will address after (and if) Plaintiffs amend and cure the shotgun-complaint issues.

away from relatives." ECF No. 33 at 4. They argue that this allegation is enough to show the Governor's connection to their "deprivations of rights." *Id.* at 5.

But "[w]here the enforcement of a statute is the responsibility of parties other than the governor . . . , the governor's general executive power is insufficient to confer jurisdiction." *Women's Emergency Network*, 323 F.3d at 949-50. Otherwise, "any state statute could be challenged simply by naming the governor as a defendant." *Id.* at 949; *cf. also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999) ("[U]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate.").

According to Plaintiffs' own allegations, the challenged actions *are* the responsibility of parties other than the governor. FAC ¶¶ 27-30. Plaintiffs have sued the Secretary of DCF, the Executive Director of DOH, the Bureau Chief of DOH's Child Protection and Special Technologies Bureau, and the Executive Director of the Guardian ad Litem Program, contending that they are responsible for the administration of Florida's foster-care system. And critically, Plaintiffs have not contended that complete relief is unavailable against these defendants. They have therefore not shown that the Governor is an appropriate *Ex parte Young* defendant. Therefore, the Governor is entitled to Eleventh Amendment immunity.

## II.    THE FIRST AMENDED COMPLAINT IS A SHOTGUN COMPLAINT.

As I indicated at the conclusion of the hearing, the First Amended Complaint is a shotgun complaint. I incorporate that oral ruling into this order, and I supplement it with the following.

Plaintiffs' complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015). For one thing, it incorporates the same 85 paragraphs into each count. While as a general matter, plaintiffs may incorporate the same allegations into multiple counts, here it is not clear that each of the 85 paragraphs relates to each claim. For example, Count III complains of "injunctions against some Plaintiffs" and identifies only three families. FAC ¶¶ 105-106. (It also says "Families A, D, and R have been impacted," *id.* ¶ 106, but it does not say how.) Yet that count incorporates all facts relating to all other Plaintiffs, including those presumably not impacted. Adding to the confusion is the fact that Plaintiffs allege certain violations of state law, *see, e.g.*, *id.* ¶¶ 43(g), 112, 113, but they then disclaim any legal claim here for such violations.

The complaint also "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. Count I, just as an example, presents statutory and constitutional

claims, alleging that the "Foster System Defendants" denied "certain Plaintiff Families" their constitutional and statutory rights. FAC ¶ 92. Which of the "Foster System Defendants" denied which of the "certain Plaintiff Families" which rights is unclear. Moreover, as the Defendants note, there are no allegations specific to some of the Plaintiffs, leaving it unclear what facts they rely on to support their claims.

When they replead, Plaintiffs must carefully set out each individual claim in a separate count, and they must incorporate only the facts relevant to that count. *Cf.* Fed. R. Civ. P. 10(b). They should specify which individual plaintiff (or plaintiffs) brings which claim against which defendant. It should be clear what asserted injury is traceable to which defendant and why. And to the extent an individual plaintiff seeks to present claims on behalf of another, *cf., e.g.*, FAC ¶ 66, plaintiffs should allege facts to show that the plaintiff may do so.

Finally, although the complaint references various "families," the Plaintiffs are individual human beings, and the facts as to each must be clear. Rather than allege, for example, that "Plaintiff Families will continue to be irreparably injured," *id.* ¶ 110, Plaintiffs should allege which individual faces prospective injury (and how and why).

### III.   THE FEDERAL STATUTES PLAINTIFFS RELY UPON IN THE FIRST AMENDED COMPLAINT DO NOT PROVIDE ANY INDIVIDUAL FEDERAL RIGHT.

Defendants presented additional defenses, including prosecutorial immunity and *Rooker Feldman*. The shotgun nature of the complaint makes it difficult to

evaluate those defenses. Without understanding, for example, how Plaintiffs' claims relate to existing state-court injunctions, I cannot fairly evaluate any potential *Rooker Feldman* issue. Similarly, without understanding what specific actions Plaintiffs challenge, I cannot see how the prosecutorial-immunity defense might apply. Those defenses, then, will be addressed if presented again as to the forthcoming Second Amended Complaint.

It makes sense, though, to address another issue Defendants raised: whether certain federal statutes provide a private right that may be vindicated under § 1983. This is a purely legal issue, which the parties have fully briefed and argued. Addressing the issue now promotes judicial efficiency.

Plaintiffs assert claims based on provisions of the Adoption Assistance and Child Welfare Act of 1980. They allege violations of 42 U.S.C. § 671(a)(19) and (a)(29); 42 U.S.C. § 672(a)(31)(A) and (B); and 42 U.S.C. § 675a(a)(1).[2] FAC at 35, 38-40. The Agency Defendants contend that none of these provisions provides a right enforceable under 42 U.S.C. § 1983. *Cf. 31 Foster Children v. Bush*, 329 F.3d 1255, 1268 (11th Cir. 2003) ("In order to have a viable cause of action under § 1983 based on the violation of a federal statute . . . , a plaintiff must establish that the

---

[2] Plaintiffs raise another provision in response to the Agency Defendants' Motion to Dismiss: 42 U.S.C. § 671(a)(10). ECF No. 32 at 18. But as Defendants note, the First Amended Complaint never cites § 671(a)(10). ECF No. 36 at 2-3.

statute allegedly violated gives the plaintiff enforceable rights." (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002))). Plaintiffs contend they all do.

Neither side has cited any federal decision holding that any of these provisions creates enforceable rights, *cf.* ECF No. 27 at 23, and the court has found none.[3] The question turns on the *Blessing* factors—the "three requirements that must be met before a federal statute will be read to confer a right enforceable under § 1983." *31 Foster Children*, 329 F.3d at 1269 (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). The requirements are these:

> (1) Congress must have intended that the provisions in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial resources; and (3) the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

---

[3] In 1996, Congress amended the Adoption Act to specifically include a private right of action for § 671(a)(18). *See* Pub. L. No. 104-188, § 1808, 110 Stat. 1755, 1903-04 (1996) (amending 42 U.S.C. § 674 by adding "(3)(A) Any individual who is aggrieved by a violation of section 671(a)(18) of this title by a State or other entity may bring an action seeking relief from the State or other entity in any United States district court."). But Congress has not amended the Act to create an explicit private right for the other requirements enumerated under § 671(a). Some courts see this as evidence that the other requirements do not confer private rights. *See Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 489 (D.N.J. 2000) (explaining that Congress's choice to amend the Act to create a private right of action for a violation of § 671(a)(18), but not for "the other various elements enumerated in § 671(a) . . . is strong evidence that Congress did not intend these other various State plan elements in § 671(a) to confer rights enforceable pursuant to § 1983" (citation omitted)); *Johnson ex rel. Estate of Cano v. Holmes*, 377 F. Supp. 2d 1084, 1100 (D.N.M. 2004).

*Id.* (citing *Blessing*).

Before turning to *Blessing*, though, I note that Plaintiffs face a difficult burden. The Adoption Act is spending legislation, and spending legislation rarely gives rise to rights enforceable under § 1983, *Arrington v. Helms*, 438 F.3d 1336, 1342 (11th Cir. 2006). "[T]he typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *31 Foster Children*, 329 F.3d at 1268 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)). And if there is any doubt, there is no federal right. "Congress must 'speak with a clear voice' and manifest an 'unambiguous' intent to confer individual rights before federal funding provisions will be read to provide a basis for private enforcement." *Id.* at 1268 (quoting *Gonzaga*). In other words, "[a]mbiguity precludes enforceable rights." *Id.* at 1270.

Here, it is impossible to conclude that Congress spoke with a "clear voice" and manifested an "unambiguous" intent to confer a private, enforceable right in any of the statutes Plaintiffs rely on. That is enough to end the inquiry, but a review of the *Blessing* requirements leads to the same result.

As to the first *Blessing* requirement—that Congress intended the provision to benefit the plaintiffs—there are three factors to consider: "whether the statute: (1) contains 'rights-creating' language that is individually focused; (2) addresses the

needs of individual persons being satisfied instead of having a systemwide or aggregate focus; and (3) lacks an enforcement mechanism through which an aggrieved individual can obtain review." *31 Foster Children*, 329 F.3d at 1270. If the provision does not meet the first *Blessing* requirement, then claims based on that provision fail. *Arrington*, 438 F.3d at 1345.

These factors could apply differently to the different statutes, so I will address them separately. But because 42 U.S.C. § 671(a)(19), (a)(29), and (a)(31) have a shared statutory context and use similar language, I discuss them together. Ultimately, I conclude that none of the provisions meets the first *Blessing* requirement.

**A.    42 U.S.C. § 671(a)(19), (a)(29), and (a)(31)**

Under the Adoption Act, the Federal Government reimburses States for certain expenses incurred in their providing foster-care and adoption services. To participate in the reimbursement program, States must submit a plan satisfying the requirements listed in 42 U.S.C. § 671(a), and they must secure HHS approval of that plan. *See 31 Foster Children*, 329 F.3d at 1270. Plaintiffs here rely on three provisions of § 671(a). In relevant part, those provisions—42 U.S.C. § 671(a)(19), (a)(29), and (a)(31)—provide:

(a) Requisite features of State plan

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—

. . .

(19) provides that the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards;

. . .

(29) provides that, within 30 days after the removal of a child from the custody of the parent or parents of the child, the State shall exercise due diligence to identify and provide notice to the following relatives: all adult grandparents, all parents of a sibling of the child, where such parent has legal custody of such sibling, and other adult relatives of the child (including any other adult relatives suggested by the parents), subject to exceptions due to family or domestic violence . . .

. . .

(31) provides that reasonable efforts shall be made—

(A) to place siblings removed form their home in the same foster care, kinship guardianship, or adoptive placement, unless the State documents that such a joint placement would be contrary to the safety or well-being of any of the siblings; and

(B) in the case of siblings removed from their home who are not so jointly placed, to provide for frequent visitation or other ongoing interaction between the siblings, unless that State documents that frequent visitation or other ongoing interaction would be contrary to the safety or well-being of any of the siblings;

These provisions lack individually focused, rights-creating language. Title VI and Title IX are clear examples of statutes that *do* have individually focused, rights-creating language. *See Gonzaga*, 536 U.S. at 284 (recognizing that Title VI and Title IX are phrased in "explicit rights-creating terms"). "[T]hose statutes are phrased 'with an *unmistakable focus* on the benefited class.'" *Id.* (quoting *Cannon v. Univ.*

*of Chicago*, 441 U.S. 677, 691 (1979)); *see also id.* at 284 n.3. They each provide that "No person . . . shall be . . . subjected to discrimination." *Arrington*, 438 F.3d at 1345 (quoting 42 U.S.C. § 2000d; 20 U.S.C. § 1681(a)) (alterations in *Arrington*).

The provisions at issue here are more like the FERPA provisions prohibiting federal funding for educational institutions that release private education records. In *Gonzaga*, the Supreme Court found those FERPA provisions' "focus [was] two steps removed from the interests of individual students and parents." 536 U.S. at 287. The provisions thus "clearly [did] not confer the sort of '*individual* entitlement' that is enforceable under § 1983." *Id.* (quoting *Blessing*, 520 U.S. at 343); *see also id.* (noting that "[u]nlike the individually focused terminology of Titles VI and IX . . . , FERPA's provisions speak only to the Secretary of Education, directing that 'no funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice'").

The provisions here are also like those in *Arrington*. In that case, the Eleventh Circuit concluded that 42 U.S.C. § 657 did not give plaintiffs an enforceable right to child-support payments. 438 F.3d at 1347. Like the statute in *Gonzaga*, which featured statutory language speaking just to the Secretary of Education, "§ 657's language speaks only to the states, instructing them to distribute child support payments in a certain fashion; it does not speak directly to individual custodial parents." *Id.* at 1346. The language was "at least one step removed from speaking of

individually enforceable private rights." *Id.* And although the statute "repeatedly refer[red] to the individual recipient 'family,'" it did so "only to explain how the state generally must distribute child support funds." *Id.*

Here, § 671(a)(19), (a)(29), and (a)(31) are not "phrased 'with an *unmistakable focus* on the benefitted class.'" *Gonzaga*, 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 691). They instead feature language directed to the States. They establish certain requirements that States must include in their program plans to qualify for federal reimbursement. And although they reference certain individuals (adult relatives, adult grandparents, siblings), who might benefit from those plan requirements, "the references to individual[s] . . . are made in the context of describing what the [State's] procedure is supposed to ensure." *31 Foster Children*, 329 F.3d at 1272. Therefore, "such provisions 'cannot make out the requisite congressional intent to confer individual rights enforceable by § 1983.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 289).

As to the second consideration, these statutes have a systemwide or aggregate focus, rather than an individual one. They are concerned with the State's overall foster-care and adoption services. The provisions require that the States "shall consider" giving adult relatives preference when placing a child, "shall exercise due diligence" when notifying certain relatives about a child's removal, and "shall" make "reasonable efforts" to place siblings together. § 671(a)(19), (a)(29), and (a)(31). As

13

in *Arrington*, the use of "the phrase '*the State shall*' . . . prefaces the procedures" the State must incorporate, meaning it is language with an aggregate or system-wide focus. *See Arrington*, 438 F.3d at 1346; *see also 31 Foster Children*, 329 F.3d at 1272.

Moreover, a State remains eligible for reimbursement so long as its plan is in "substantial conformity" with the Adoption Act's requirements. *See* 42 U.S.C. § 1320a-2a(a). The fact that States receive funding if they comply on a systemwide basis—even if not in some individual case—further highlights the statutes' aggregate focus. *See Arrington*, 438 F.3d at 1346 ("[T]he Supreme Court and our Circuit have repeatedly held 'substantial compliance' provisions in Spending Clause legislation are inconsistent with individually enforceable rights.").

As for the final consideration under the first *Blessing* requirement, the Eleventh Circuit has noted that the Adoption Act lacks a mechanism for aggrieved individuals to obtain review. *31 Foster Children*, 329 F.3d at 1272. Under the Act, the Secretary ensures States' compliance by requiring them to take corrective action or by withholding federal funds when states fail to comply with their plans. *See id.* (citing § 1320a-2a). And "[t]his enforcement scheme is not like those that have been held by the Supreme Court to preclude suits under § 1983." *Id.* (listing cases). Yet "the lack of an enforcement mechanism . . . is but one of the factors [] considered."

*Id.* at 1273. And as in *31 Foster Children*, it alone cannot satisfy the first *Blessing* requirement.

These provisions do not satisfy the first *Blessing* requirement, meaning they do not establish any enforceable right.

**B.     42 U.S.C. § 675a(a)(1)**

Plaintiffs also rely on § 675a(a)(1), but this provision also does not meet the first *Blessing* requirement. The provision applies to children 16 and older and sets out requirements for their case plan approval.[4] Similar to the provisions addressed above, this provision does not have individually focused, rights-creating language.

---

[4] Section 675a(a)(1) provides:

(a) Requirements for another planned permanent living arrangement

In the case of any child for whom another planned permanent living arrangement is the permanency plan determined for the child under section 675(5)(C) of this title, the following requirements shall apply for purposes of approving the case plan for the child and the case system review procedure for the child:

> (1) Documentation of intensive, ongoing, unsuccessful efforts for family placement
>
> At each permanency hearing held with respect to the child, the State agency documents the intensive, ongoing, and, as of the date of the hearing, unsuccessful efforts made by the State agency to return the child home or secure a placement for the child with a fit and willing relative (including adult siblings), a legal guardian, or an adoptive parent, including through efforts that utilize search technology (including social media) to find biological family members for the children.

The provision describes applicable procedures for approving a case plan and case system review procedure for certain children, and as in *31 Foster Children*, "[t]he references to individual children . . . are made in the context of describing what the procedure is supposed to ensure." 329 F.3d at 1272.

This provision also is subject to the substantial-conformity provisions, which, again, indicates "an aggregate instead of an individual focus." *Id.* (citing *Gonzaga*, 536 U.S. at 288).

Finally, although the Adoption Act lacks an enforcement mechanism for aggrieved individuals to obtain review, this factor alone is not enough to overcome the lack of individually focused, rights-creating language in § 675a(a)(1) and its aggregate, rather than individual focus. Therefore, Congress did not establish an enforceable right in § 675a(a)(1).

In short, none of the Adoption Act statutes on which Plaintiffs base their claims provides a private right that is enforceable under § 1983.

### CONCLUSION

The motions to dismiss (ECF Nos. 27, 28) are GRANTED. All claims against the Governor are dismissed based on Eleventh Amendment immunity. All claims based on 42 U.S.C. § 671(a)(19) and (a)(29); 42 U.S.C. § 672(a)(31)(A) and (B); and 42 U.S.C. § 675a(a)(1) are dismissed for failure to state a claim. The remaining claims are dismissed because the First Amended Complaint is a shotgun pleading.

Plaintiffs may file an amended complaint presenting claims against the Agency Defendants that are not dependent on an enforceable right under the statutes evaluated above.

Plaintiffs' deadline to do so is 14 days from the date of this order. The Defendants will then have 14 days to respond.

SO ORDERED on February 24, 2023.

s/ *Allen Winsor*
United States District Judge