## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**TANIYAH CRUTCH-WILLIAMS,**
**RODNEY JR. WILLIAMS,**
**CHARLOTTE WILLIAMS,**
**RODNEY SR. WILLIAMS,**
**CHRISTINE ROGERS, DANNY ROGERS,**
**DELAILA PINO LASALLE,**
**KENNETH NUNEZ ARROYO,**
**ESMERALDA ARROYO,**
**KEILA GARDNER, MARVIN GARDNER,**
**TRELANE JACKSON,**
**LEON ZETAR, SHARON ZETAR,**
**ALTHEA HOUSTON, CURT HOUSTON,**
**JILL LIPTON,**
**MINORS 2-8 and 10-13 by and through their Next Friends.**

      Plaintiffs,

      **v.**                       **Case No. 2022 CV  222**

**SHEVAUN HARRIS, as Secretary of the**
**Florida Department of Children and Families;**
**JOSEPH LADAPO, M.D., as the Executive**
**Director of the Florida Department of Health;**
**PATRICIA ARMSTRONG, as the Bureau Chief**
**of the Florida Department of Health Child**
**Protection Team; and**
**DENNIS MOORE, as Executive Director of the**
**Florida Guardian ad Litem Program,**

      Defendants.

## PLAINTIFFS' SECOND AMENDED COMPLAINT[1]

Plaintiffs, Taniyah Crutch-Williams, Rodney Jr. Williams, Charlotte Williams, Rodney Sr. Williams, Christine Rogers, Danny Rogers,  Delaila Pino LaSalle, Kenneth Nunez Arroyo, Esmeralda Arroyo, Keila Gardner, Marvin Gardner, Trelane Jackson, Leon Zetar, Sharon Zetar, Althea Houston, Curt Houston, Jill Lipton[2], and Minors #s 2-8 and 10-13 by and through their next friends (as set forth below), file this civil action against Defendants, SHEVAUN HARRIS, as Secretary of the Department of Children and Families ("DCF"), JOSEPH LADAPO, M.D., as the Executive Director of the Florida Department of Health, ("DOH"), PATRICIA ARMSTRONG,  as the Bureau Chief of the Florida Department of Health Children's Medical  Services and the Child Protection Team ("CMS" or "CPT"), and DENNIS MOORE, as Executive Director of the Florida Guardian ad Litem Program ("GAL") within the Statewide GAL Office, and in support of their pleading, Plaintiffs allege:

---

[1] On February 24, 2023, the Court granted Defendants' motions to dismiss (Doc. No. 40). The Court granted Plaintiffs leave to amend by March 10, 2023, (Doc. No. 40), and that deadline was subsequently extended to March 24, 2023. (Doc. No. 42). By filing the Second Amended Complaint, Plaintiffs are not intending to waive any rights or claims of error related to the Court's rulings on the motions to dismiss (Doc. Nos. 27 & 28).

[2] Pseudonyms are used throughout this pleading both to protect the privacy rights of the parties, including minors, and to avoid potential retaliation by Defendants.

I.

STATEMENT OF THE CASE

1.     This case is about protecting families by ending customs and policies that deprive and threaten to deprive Plaintiffs of rights secured by the First Amendment to the United States Constitution.

2.     Defendants have customs and policies of separating siblings in foster care; not scheduling regular and meaningful visitation among siblings who are separated by Defendants; not placing children in foster care with adult relative caregivers; and ignoring the recommendations and preferences of biological parents, whose rights have not been terminated, about the placement of their children with siblings and adult relative caregivers.

3.     The rights at issue are secured by the First Amendment to the United States Constitution. Specifically, Defendants' customs and policies deprive Plaintiffs or threaten to deprive Plaintiffs of their rights of association and cohabitation with family members when Defendants remove children from their homes and place them in foster care. When balanced against the fundamental rights at issue, Defendants' customs and policies cannot survive strict scrutiny. *See generally City of Dallas v. Stanglin,*

490 U.S. 19 (1989); *Buckley v. Valeo,* 424 U.S. 1, 25 (1976); *United States v. Del Valle-Cruz*, 785 F.3d 48, 51-52 (1st Cir. 2015); *United States v. Bear*, 769 F.3d 1221, 1229 (10th Cir. 2014); *United States v. Quinn*, 698 F.3d 651, 651 (7th Cir. 2012); *United States v. Worley*, 685 F.3d 404, 408 (4th Cir. 2012); *United States v. Voelker*, 489 F.3d 139, 154-55 (3d Cir. 2007); *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006).

4.      As a result, a declaratory judgment should be entered declaring that it is unconstitutional and a deprivation of Plaintiffs' First Amendment rights to have practices, customs, and policies of: separating siblings who are removed from their homes by Defendants and placed into foster care; not scheduling regular visitation among siblings who are separated by Defendants; not placing children in foster care with adult relative caregivers; and ignoring the recommendations and preferences of biological parents, whose rights have not been terminated, about the placement of their children with siblings and adult relative caregivers.

5.      In addition, a preliminary injunction should be entered until a permanent injunction requires Defendants to discontinue its customs and policies, as set forth above, and to properly train and supervise case workers responsible for: placing siblings in foster care together; scheduling regular

visitation among siblings who are not placed together; placing children in Defendants' custody with adult relative caregivers; and discussing biological parents' recommendations and preferences when their child(ren) is/are taken by Defendants and placed into foster care.[3]

## II.
## THE PARTIES

### A.    The Plaintiffs

6.    Plaintiffs are individuals whose rights have been deprived or who are threatened by the deprivation of rights as the result of Defendants' customs and policies; or individuals who bring claims in representative capacities on behalf of minors whose rights have been deprived or are at risk of being deprived by Defendants' customs and policies.

---

[3] Some courts analyze the constitutional rights raised by this complaint under the substantive due process clause of the Fourteenth Amendment. *See e.g. Aristotle P. v. Johnson*, 721 F. Supp. 1002, 1007-1010 (N.D. IL 1989). For purposes of both FRCP 8 (a) & (e), Plaintiffs put Defendants on notice that they intend to pursue their claims under either the First or Fourteenth Amendment or both should this Court determine that its analysis of Plaintiffs' claims would differ in any meaningful way under those Amendments. Some courts have determined the analysis of the claims raised in this pleading would be the same under either the First or Fourteenth Amendment. *See e.g. Kenny A. ex rel Winn v. Perdue*, 218 F.R.D. 277, 298 (N.D. GA 2003) (Plaintiffs stated claims under First, Ninth, and Fourteenth Amendments; "[t]he constitutional right to family integrity encompasses the right of children in foster care to have meaningful contact with their siblings and parents."); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 163-64 (D. Mass. 2011).

7.     In general, Plaintiffs are children in Defendants' custody or children who are at imminent risk of being in Defendants' custody; or adults with family members who are children in Defendants' custody or who are at imminent risk of being in Defendants' custody. Individuals in state custody have constitutional rights *inter alia* to conditions of confinement which bear a reasonable relationship to the purpose of their custody. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The purpose of the child welfare system is to promote the well-being, permanency, and safety of children and families by helping families create nurturing and loving family environments without infringing on parental rights.

8.     The Plaintiffs include members of the Williams family. Taniyah Crutch-Williams and Rodney Jr. Williams are residents of Clay County, Florida.

9.     Taniyah and Rodney Jr. are the biological parents of three children: Minor #1 – Ra. Williams; Minor #2 – Ro. Williams; and Minor #3 – Ta. Williams.

10.     Taniyah and Rodney Jr. bring individual and representative claims. Taniyah and Rodney Jr. have all parental rights to Minor #3. Taniyah and Rodney Jr.'s parental rights were terminated as to Minors #1 and #2.

11.     Minor #1 was adopted by a family with connections to Florida's foster care system. Kids First of Florida, Inc. contracted with DCF to provide case management services for children taken into Defendants' custody. Minors #s 1 & 2 were two of those children.

12.     A board member (the husband) and agent (the wife) of KFF adopted Minor #1 and attempted to adopt Minor #2.

13.     Minor #2 was taken into Defendants' custody based on allegations of abuse or neglect related to Minor #1. There were no allegations of abuse or neglect involving Minor #2.

14.     Minor #2 was adopted by Charlotte and Rodney Sr. Williams.

15.     Defendants attempted to take Minor #3 into their custody based on allegations of abuse related to Minor #1. However, Defendants were unsuccessful and Minor #3 remained and remains in the custody of his biological parents, Taniyah and Rodney Jr.

16.     Taniyah and Rodney Jr.'s individual claims are related to their fundamental right to the care, custody, and control of their children. There is an imminent risk that Minor #3 will be taken by Defendants or that Defendants will attempt to take custody of Minor #3. Defendants have a custom or policy of taking siblings from their parents when there are

allegations of abuse or neglect related to a sibling. Defendants have threatened or attempted to take custody of Minor #3 based on historic allegations of abuse or neglect of Minor #1.

17.    Taniyah and Rodney Jr.'s representative claims are related to Minor #3's fundamental right to visitation with his siblings, Minors #1 & #2.

18.    Charlotte and Rodney Sr. Williams, who reside in Clay County, Florida, have representative claims on behalf of Minor #2. Charlotte and Rodney Sr. adopted Minor #2. Charlotte and Rodney's representative claims are related to Minor #2's fundamental right to visitation with his siblings, Minors #s 1 & 3.

19.    Christine and Danny Rogers have representative claims on behalf of Minor #4 - Ar. Doe. Christine and Danny Rogers adopted Minor #4, who has a sibling in care (John Doe). Christine and Danny Rogers' representative claims are related to Minor #4's fundamental right to visitation with her sibling.

20.    The Arroyo family includes Delaila Pino LaSalle, Kenneth Nunez Arroyo, and Esmeralda Arroyo. Delaila and Kenneth reside in Palm Beach County, Florida and are the biological parents of Minors #s 5-7, Ad. and Ax. Pino LaSalle, and El. Pino. Esmeralda is the paternal grandmother of Minors

#s 5 – 7 and she resides in Lee County, Florida. All three children are in Defendants' custody. Delaila and Kenneth have parental rights to Minors #s 5-7. Delaila and Kenneth recommended and continue to recommend that Minors #s 5-7 be placed with and adopted by Esmeralda, if the children cannot be returned home. Esmeralda, in turn, wants to adopt Minors #s 5-7. Esmeralda is an appropriate adult relative caregiver.

21.   Delaila and Kenneth's individual claims are related to their fundamental right to control the care and custody of their children. Delaila and Kenneth have requested of Defendants that their children be placed together with an adult relative caregiver. Defendants have refused and continue to refuse to respect the parents' requests. Delaila and Kenneth have requested that, until their children can be reunified, regular sibling visitation be granted. However, to date, Defendants have refused and continue to refuse this request by the biological parents.

22.   Delaila and Kenneth's representative claims are related to Minors #s 5-7's fundamental rights to cohabitate together as siblings, to regularly visit one another as siblings, and to cohabitate with a relative adult caregiver. Minors #s 5 & 6 are in Defendants' custody and placed together with a non-

relative caregiver. Minor #7 is also in Defendants' custody but placed with a different non-relative caregiver.

23.     Keila and Marvin Gardner reside in Tennessee and bring representative claims on behalf of their maternal grandchild, Minor # 8 - Mi. Gardner. Minor #8 has eight siblings who either have been adopted by relative adult caregivers or are in the custody of their biological parents. Minor #8 does not reside or have scheduled visitation with any one of his eight siblings. Keila and Marvin's representative claims are related to Minor #8's fundamental rights to visitation with his siblings and cohabitation with an adult relative caregiver. Defendants have taken custody of Minor #8. Keila and Marvin desire and intend to adopt Minor #8, if Minor #8 cannot be returned home. Keila and Marvin are appropriate adult relative caregivers.

24.     Trelane Jackson brings representative claims on behalf of her maternal grandchild, Minor #9 – DK, and she resides in Putnam County, Florida. Trelane Jackson's representative claim is related to Minor #9's fundamental right to cohabitation with an adult relative caregiver. Trelane Jackson's individual claim is related to her fundamental right to cohabitation with her grandson. Defendants have taken custody of Minor #9, who is not currently

residing with an adult relative caregiver. Defendants placed Minor #9 into foster care with a stranger to the family. Defendants placed Minor #9 with a foster care system insider. Defendants placed Minor #9 with the President of the Florida Foster / Adoptive Parent Association ("FAPA"), a DCF contractor. Trelane is an appropriate adult relative caregiver.

25.    Leon and Sharon Zetar bring individual claims related to the placement of Minor #10 – Le. Zetar with an adult relative caregiver. Leon and Sharon also bring representative claims related to Minor #10's fundamental right to cohabitation with an adult relative caregiver. Defendants have taken custody of Minor #10, who is not residing with an adult relative caregiver despite her biological father's recommendation. Leon recommended and continues to recommend that Minor #10 be placed with and adopted by Sharon if his daughter is unable to return home. Leon is Minor #10's biological father and Leon has all paternal rights to Minor #10. Sharon is Minor #10's paternal aunt and desires that Minor #10 be placed with her, unless and until the minor can be returned home. If Minor # 10 cannot be returned home, then Sharon's intention is to adopt Minor #10. Sharon is an appropriate adult relative caregiver.

26.     Althea and Curt Houston bring representative claims on behalf of their maternal grandchildren, Na. Kreps – Minor #11 and Ni. Kreps – Minor #12. Althea and Curt reside in Hillsborough County, Florida. Defendants have taken custody of Minors #s 11 & 12, who do not reside with an adult relative caregiver.

27.     Althea and Curt's representative claims are related to Minors #s 11 & 12's fundamental rights to cohabitation with an adult relative caregiver.

28.     Althea and Curt's claims are related to their fundamental rights to cohabitation with their grandchildren. Althea and Curt are appropriate adult relative caregivers.

29.     Jill Lipton brings a representative claim on behalf of her biological daughter, Minor #13 – Is. Lipton. Jill and Minor #13 reside in Pasco County, Florida. Minor #13 has two older siblings that Defendants have taken custody of previously or have threatened to take custody of previously. When Minor #13's sibling was taken by Defendants, regular sibling visitation was not scheduled and her sibling was not placed with an adult relative caregiver.

30.     Jill's individual claim is related to her fundamental right to the care, custody, and control of her children. There is an imminent risk that Minor

#13 will be taken by Defendants or that Defendants will attempt to take custody of Minor #13. Defendants have a custom or policy of taking siblings from their parents when there are allegations of abuse or neglect related to a sibling. There is an imminent risk that Defendants will attempt to take custody of Minor #13 based on historic allegations of abuse or neglect of Minor #13's siblings.

**B.    The Defendants**

31.    Shevaun Harris is the Secretary of DCF.

32.    Joseph Ladapo, M.D. is the Executive Director of the DOH.

33.    Patricia Armstrong is the Bureau Chief of CMS or CPT.

34.    Dennis Moore is Executive Director of the Florida GAL program.

35.    Defendants are sued in their official capacities.

III.
JURISDICTION AND VENUE

36.    Jurisdiction is invoked pursuant to 28 U.S.C §§1331 and 1343 in that this is a civil action arising under 42 U.S.C. §1983 to redress the Defendants' deprivation under color of law of the federal rights, privileges and immunities secured to the relatives and children involved in the Florida foster system by the Constitution and laws of the United States. The federal

rights sought to be redressed are guaranteed by the First and Fourteenth Amendments to the United States Constitution. This Court also has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202, as Plaintiffs seek declaratory and injunctive relief related to: (1) the separation of siblings in care; (2) regularly scheduled visitation when siblings are separated in care; and (3) the separation of children in care from their relatives.

37.   Venue lies in Leon County, Florida pursuant to 28 U.S.C. §1391(b), as Plaintiffs' claims arise out of their relationship with the Defendants, who operate the Florida foster care system throughout the state; and a majority of the Defendants, if not all of the Defendants, have their principal place of business in Leon County, Florida, which is located in the Northern District of Florida, Tallahassee Division.

## IV.
## PLAINTIFFS' CLAIMS: An Overview

38.   42 U.S.C. § 1983 states in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

39.    In this case, Plaintiffs seek prospective injunctive relief against Defendants. Each deprivation of rights alleged herein is redressable through prospective injunctive relief and / or a declaratory judgment. Each claim asserted *infra* is against each one of the Defendants because Defendants' practices, customs, and polices have deprived, deprive, and will continue to deprive Plaintiffs of their constitutional rights.

40.    The United States Supreme Court has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate. *See Moore v. East Cleveland,* 431 U.S. 494, 503–504 (1977) (plurality opinion). The Supreme Court has not attempted to mark the precise boundaries of this type of constitutional protection. The intimate relationships the Supreme Court has accorded constitutional protection include marriage, *Zablocki v. Redhail,* 434 U.S. 374, 383–386 (1978); the begetting and bearing of children, *Carey v. Population Services International,* 431 U.S. 678, 684–686 (1977); child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535 (1925);

and cohabitation with relatives, *Moore v. East Cleveland,* 431 U.S. at 503–504. *See also Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987); *McCabe v. C.E. Sharrett*, 12 F. 3d 1558, 1563 (11th Cir. 1994).

41.   The First Amendment protects those relationships, including family relationships, that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts v. United States Jaycees,* 468 U.S. 609, 619–620 (1984).

42.   The Supreme Court has recognized that the right to engage in activities protected by the First Amendment implies "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees,* 468 U.S. at 622. *See also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 907–909 (1982). For this reason, "[i]mpediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First Amendment...." *Hishon v. King & Spalding,* 467 U.S. 69, 80, n. 4 (1984) (POWELL, J., concurring) (*citing NAACP v. Button,* 371 U.S. 415 (1963); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958)).

43.    The First Amendment protects two categories of association: intimate association and expressive association. *Moore v. Tolbert*, 490 Fed.Appx. 200, 203 (11th Cir. 2012) (per curiam). The right to intimate association derives from the fundamental right to personal liberty and guarantees that individuals can enter into and maintain certain intimate human relationships. *Id*. The right to expressive association arises out of activities explicitly identified in the First Amendment and therefore guarantees the right of individuals to associate for purposes of speaking, assembling, petitioning for the redress of grievances, and exercising religion. *Robert*, 468 U.S. at 618. The intimate and expressive features of constitutionally protected association may coincide. *McCabe*, 12 F.3d at 1563.

44.    A plaintiff who challenges a custom or policy on the grounds that it violates the right to intimate association must establish that the custom or policy infringes upon a protected personal relationship. *McCabe*, 12 F.3d at 1563. On one end of the spectrum are those clearly protected personal relationships which are "the most intimate" of human associations (i.e., those that attend the creation and sustenance of the family – marriage, childbirth, raising and educating children, and cohabitation with relatives). *Roberts*, 468 U.S. at 619.

45.     The right of intimate association is the freedom to choose to enter into and maintain certain intimate human relationships, and it is protected from undue government intrusion as a fundamental aspect of personal liberty. *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017). This constitutional protection encompasses cohabitating with one's relatives. *Roberts*, 468 U.S. at 619. A custom or policy that directly and substantially interferes with family living arrangements burdens this fundamental right. *Lyng v. Castillo*, 477 U.S. 635, 638 (1986).

46.     When government intrudes on choices concerning family living arrangements, courts must carefully examine the importance of the government interests advanced and the extent to which they are served by the challenged custom or practice. *Moore*, 431 U.S. at 499.

47.     Decisions concerning the placement of siblings together, regularly scheduled visitation among siblings, and the placement of children with adult relative caregivers are protected as a part of parents' fundamental rights to control the care and custody of their children. *Troxel v. Granville*, 530 U.S. 57 (2000); *Santosky v. Kramer*, 455 U.S. 745 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model

parents or have lost temporary custody of their child to the State."); *Stanley v. Illinois*, 405 U.S. 645 (1972); *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977).

48.    A local government entity is liable under Section 1983 when action pursuant to a policy causes a constitutional deprivation. *Monell v. Dep't. of Soc. Serves.*, 436 U.S. 658, 691 (1978). That includes a policy of inaction when such inaction amounts to a failure to protect constitutional rights. *City of Canton v. Harris*, 489 U.S.  378, 388 (1989). The custom or policy of inaction must be the result of a conscious or deliberate choice to follow a course of action among various alternatives by officials responsible for establishing policy for the subject matter at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483084 (1986) (plurality opinion).

49.    A local government entity's failure to train its employees can also create Section 1983 liability when the failure to train amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact. *City of Canton*, 489 U.S. at 388-89.

50.    In that event, the deficiencies in the training program must be closely related to the alleged injury. In other words, the plaintiff must show her

injury would have been avoided had the government entity properly trained its employees. *City of Canton*, 489 U.S. at 389-91.

51.    In this case, Plaintiffs were deprived of their constitutional rights by Defendants, who have customs or policies which are deliberately indifferent to Plaintiffs' First Amendment rights of cohabitation and association with relatives.

52.    Defendants' customs or policies were and are the moving forces behind the constitutional violations alleged herein.

53.    Defendants were acting at all applicable times under color of state law.

54.    Whether Defendants had a custom or policy of deliberate indifference is generally a question of fact. *City of Canton*, 489 U.S. at 390.

55.    Defendants were and are aware that children taken into custody were not and are not placed with their siblings and / or adult relative caregivers. That custom and policy is widespread throughout the Florida foster care system.

56.    In instances where siblings in care are not placed together, Defendants were and are aware that siblings are not afforded visitation with one another. That custom and policy is widespread throughout the Florida foster care system.

57.    Defendants, fully aware of those widespread and ongoing customs and practices, failed and continue to fail to properly train and supervise employees responsible for placing siblings in custody together and, when siblings are not placed together, for affording siblings regular and meaningful visitation with one another.

58.    Defendants, fully aware of those widespread and ongoing customs and practices, failed and continue to fail to properly train and supervise employees responsible for placing children with adult relative caregivers.

59.    Defendants, fully aware of those widespread and ongoing customs and practices, failed and continue to fail to properly train and supervise employees responsible for working with parents whose rights have not been terminated on their preferences for placing children with adult relative caregivers.

60.    Defendants failed to implement and maintain proper procedures which would require, prior to placing siblings in separate foster homes, efforts to place siblings together.

61.    Defendants failed to implement and maintain proper procedures which would require, after siblings are placed in separate foster homes, efforts to afford siblings regular and meaningful visitation with one another.

62.   Defendants failed to implement and maintain proper procedures which would require, prior to placing children in non-relative foster homes, efforts to place children with relative adult caregivers.

63.   Defendants failed to implement and maintain proper procedures which would require, prior to placing children in non-relative foster homes, efforts to place children with adult relative caregivers as recommended by the child's parent(s).

64.   Defendants have a custom or policy of taking custody of children without taking proper efforts to place siblings together.

65.   Defendants have a custom or policy of separating siblings in foster care without visitation.

66.   Defendants have a custom or policy of taking custody of children without taking proper efforts to place children with adult relative caregivers.

67.   Defendants have a custom or policy of taking custody of children without taking proper efforts to place children with adult relative caregivers in accordance with the parent or parents' recommendation(s).

68.   As the result of Defendants' customs and policies, Defendants did not bother to place siblings together, to afford siblings visitation, to place

children with adult relative caregivers, or to consider placement recommendations from the parent(s).

69.    Because children are taken into custody and children are unable to take care of themselves or advocate for themselves, training and supervision of case workers is of paramount importance. When proper steps are not taken to place siblings together, to allow sibling visitation, to place children with adult relative caregivers, or to consider placement recommendations made by the parents the consequences are dire. Siblings in care are separated, without visitation, and children are not placed with adult relative caregivers. The resulting historic constitutional deprivations have caused irreparable harm. Brothers and sisters have been torn apart. Children have been placed with strangers when appropriate adult relative caregivers are available. The risk of ongoing deprivations far outweighs the burden on Defendants of properly training and supervising their employees and correcting Defendants' historic and ongoing customs and practices.

70.    Despite the knowledge of historic deprivations and the knowledge of impending and ongoing constitutional deprivations, Defendants have chosen to ignore the problem, thereby displaying an official custom or practice which was and is deliberately indifferent to the rights of minor

siblings in care, the rights of adult relative caregivers, and the rights of parents, whose rights have not been terminated, all of whom have and / or are likely to come into contact with Florida's foster care system.

71.    Plaintiffs have a fundamental right to determine their own familial residential arrangements without governmental interference. Times of adversity, like that which occurs when a child is placed into Defendants' custody, require that extended family come together to maintain or rebuild a secure home life.

72.    Plaintiffs are siblings who desire to live together, children who desire to live with adult relative caregivers, adult relative caregivers who desire to reside with or adopt children taken by Defendants and in Defendants' custody, and parents whose rights have not been terminated and have preferences and recommendations for placement of their children with adult relative caregivers.

73.    Plaintiffs have standing to bring the constitutional claims in this complaint. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *31 Foster Parents v. Bush*, 329 F.3d

1255, 1264 (11th Cir. 2003) (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)) (citations and internal marks omitted). *See also Florida Action Committee, Inc. v. Seminole County*, 212 F. Supp.3d 1213, 1220 (M.D. Flo. 2016) (At the pleading stage, the burden of establishing standing is not particularly onerous and will be satisfied by general allegations of injury resulting from Defendants' conduct.).

74.    Plaintiffs have suffered and will continue to suffer injuries in fact. A causal connection exists between Plaintiffs' injuries and Defendants' conduct. Plaintiffs' injuries will be redressed by a favorable decision in this case.

75.    Plaintiffs' claims are not barred by absolute immunity, the Eleventh Amendment, the *Rooker-Feldman* Doctrine, *Younger* Abstention, or any other similar defense.

76.    Absolute immunity is inapplicable because none of the Plaintiffs were prosecuted in any state court proceedings related to the rights or deprivations alleged herein. Therefore, none of the Plaintiffs "lost" in any state court proceedings related to any of the rights or deprivations alleged herein. For this same reason, the *Rooker-Feldman* doctrine does not apply. *Roe v. State of Ala. By and Through Evans*, 43 F.3d 574, 579-580 (11th Cir. 1995)

("because the plaintiffs are not parties to the circuit court action, the plaintiffs had no opportunity to raise their constitutional claims in the circuit court …"); *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983) "The *Rooker* bar can only apply to issues that the plaintiff had a reasonable opportunity to raise."). In addition, Plaintiffs are not asking this Court to review, reverse, or invalidate any final state court decisions. Defendants' practices, customs, and polices injured, continue to injure, or threaten to injure Plaintiffs.

77.    The Eleventh Amendment is inapplicable because Plaintiffs seek prospective injunctive relief to enjoin state officials from ongoing violations of Plaintiffs' Constitutional rights. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Doe 1-13 v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998).

78.    In addition, *Younger* abstention has no place in this case because *inter alia* there are no ongoing dependency proceedings in which the minors or adult relative caregivers could have raised any of the constitutional deprivations alleged herein. § 39.501 *et seq*., Fla. Stat. (2013).

V.

PLAINTIFFS' CLAIMS: Causes of Action

Count I

Plaintiffs: Taniyah Crutch – Williams and Rodney Jr. Williams as next friends of Minor #3
Section 1983: First Amendment Right of Association (sibling visitation)

79.   Based on the deprivations of rights alleged herein, Taniyah and Rodney Jr. as next friends of Minor #3 seek prospective injunctive relief against Defendants.

80.   There is no adequate remedy at law.

81.   Irreparable injury will continue to occur without this Court's intervention.

82.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

83.   Appropriate injunctive relief in this case would promote justice and the public interest.

Count II
Plaintiffs: Charlotte and Rodney Sr. Williams as next friends of Minor #2
Section 1983: First Amendment Right of Association (sibling visitation)

84.   Based on the deprivations of rights alleged herein, Charlotte and Rodney Sr. as next friends of Minor #2 seek prospective injunctive relief against Defendants.

85.   There is no adequate remedy at law.

86.     Irreparable injury will continue to occur without this Court's intervention.

87.     The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

88.     Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count III
Plaintiffs: Taniyah and Rodney Jr. Williams as next friends of Minor #3
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

89.     There is a real and immediate threat that Minor #3 will be taken into custody by Defendants.

90.     Based on the threatened deprivation of rights alleged herein, Taniyah and Rodney Jr. as next friends of Minor #3 seek prospective injunctive relief against Defendants.

91.     There is no adequate remedy at law.

92.     Irreparable injury will continue to occur without this Court's intervention.

93.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

94.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count IV
Plaintiffs: Taniyah and Rodney Jr. Williams
Section 1983: First Amendment Right of Association (parental control over custody and care)

95.   There is a real and immediate threat that Minor #3 will be taken into custody by Defendants.

96.   Based on the threatened deprivation of rights alleged herein, Taniyah and Rodney Jr. seek prospective injunctive relief against Defendants.

97.   There is no adequate remedy at law.

98.   Irreparable injury will continue to occur without this Court's intervention.

99.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

100.  Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

### Count V
Plaintiffs: Danny and Christine Rogers as next friends of Minor #4
Section 1983: First Amendment Right of Association (sibling visitation)

101.  Based on the deprivations of rights alleged herein, Danny and Christine as next friends of Minor #4 seek prospective injunctive relief against Defendants.

102.  There is no adequate remedy at law.

103.  Irreparable injury will continue to occur without this Court's intervention.

104.  The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

105.  Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

### Count VI
Plaintiffs: Delaila Pino LaSalle and Kenneth Nunez Arroyo as next friends
of Minors #s 5-7
Section 1983: First Amendment Right of Association (sibling cohabitation)

106.   Based on the deprivations of rights alleged herein, Delaila and Kenneth as next friends of Minors #s 5-7 seek prospective injunctive relief against Defendants.

107.   There is no adequate remedy at law.

108.   Irreparable injury will continue to occur without this Court's intervention.

109.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

110.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count VII
Plaintiffs: Delaila Pino LaSalle and Kenneth Nunez Arroyo as next friends
of Minor #7
Section 1983: First Amendment Right of Association (sibling visitation)

111.   Based on the deprivations of rights alleged herein, Delaila and Kenneth as next friends of Minors #7 seek prospective injunctive relief against Defendants.

112.   There is no adequate remedy at law.

113. Irreparable injury will continue to occur without this Court's intervention.

114. The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

115. Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count VIII
Plaintiff: Esmeralda Arroyo
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

116. Based on the deprivation of rights alleged herein, Esmeralda seeks prospective injunctive relief against Defendants.

117. There is no adequate remedy at law.

118. Irreparable injury will continue to occur without this Court's intervention.

119. The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

120.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count IX
Plaintiffs: Delaila Pino LaSalle and Kenneth Nunez Arroyo as next friends of Minors #5-7
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

121.   Based on the deprivation of rights alleged herein, Delaila and Kenneth seek prospective injunctive relief against Defendants.

122.   There is no adequate remedy at law.

123.   Irreparable injury will continue to occur without this Court's intervention.

124.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

125.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count X
Plaintiffs: Delaila Pino LaSalle and Kenneth Nunez Arroyo
Section 1983: First Amendment Right of Association (parental control over custody and care)

126. Delaila and Kenneth seek prospective injunctive relief against Defendants.

127. There is no adequate remedy at law.

128. Irreparable injury will continue to occur without this Court's intervention.

129. The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

130. Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XI
Plaintiffs: Keila and Marvin Gardner as next friends of Minor #8
Section 1983: First Amendment Right of Association (sibling visitation)

131. Based on the deprivations of rights alleged herein, Keila and Marvin as next friends of Minor #8 seek prospective injunctive relief against Defendants.

132. There is no adequate remedy at law.

133. Irreparable injury will continue to occur without this Court's intervention.

134.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

135.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XII
Plaintiffs: Keila and Marvin Gardner
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

136.   Based on the deprivation of rights alleged herein, Keila and Marvin seek prospective injunctive relief against Defendants.

137.   There is no adequate remedy at law.

138.   Irreparable injury will continue to occur without this Court's intervention.

139.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

140.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XIII
Plaintiffs: Trelane Gardner

Section 1983: First Amendment Right of Association (cohabitation with adult relative caregiver)

141.   Based on the deprivation of rights alleged herein, Trelane seeks prospective injunctive relief against Defendants.

142.   There is no adequate remedy at law.

143.   Irreparable injury will continue to occur without this Court's intervention.

144.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

145.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XIV
Plaintiffs: Sharon Zetar
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregiver)

146.   Based on the deprivation of rights alleged herein, Sharon seeks prospective injunctive relief against Defendants.

147.   There is no adequate remedy at law.

148.   Irreparable injury will continue to occur without this Court's intervention.

149.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

150.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XV
Plaintiffs: Leon Zetar
Section 1983: First Amendment Right of Association (parental control over custody and care)

151.   Leon seeks prospective injunctive relief against Defendants.

152.   There is no adequate remedy at law.

153.   Irreparable injury will continue to occur without this Court's intervention.

154.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

155.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XVI
Plaintiffs: Leon Zetar as next friend of Minor #10
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

156.   Based on the deprivation of rights alleged herein, Leon seeks prospective injunctive relief against Defendants.

157.   There is no adequate remedy at law.

158.   Irreparable injury will continue to occur without this Court's intervention.

159.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

160.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

## Count XVII
Plaintiffs: Althea and Curt Houston as next friend of Minors #s 11 & 12
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

161.   Based on the deprivation of rights alleged herein, Althea and Curt seek prospective injunctive relief against Defendants.

162.   There is no adequate remedy at law.

163.   Irreparable injury will continue to occur without this Court's intervention.

164.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

165.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XVIII
Plaintiffs: Althea and Curt Houston
Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

166.   Based on the deprivation of rights alleged herein, Althea and Curt seek prospective injunctive relief against Defendants.

167.   There is no adequate remedy at law.

168.   Irreparable injury will continue to occur without this Court's intervention.

169.   The ongoing deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

170.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count IXX
Plaintiff: Jill Lipton as next friend of Minor #13

Section 1983: First Amendment Right of Association (cohabitation with adult relative caregivers)

171.   There is a real and immediate threat that Minor #13 will be taken into custody by Defendants.

172.   Based on the threatened deprivation of rights alleged herein, Jill as next friend of Minor #13 seeks prospective injunctive relief against Defendants.

173.   There is no adequate remedy at law.

174.   Irreparable injury will continue to occur without this Court's intervention.

175.   The threatened deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

176.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XX
Plaintiff: Jill Lipton
Section 1983: First Amendment Right of Association (parental control over custody and care)

177.   There is a real and immediate threat that Minor #13 will be taken into custody by Defendants.

178.   Based on the threatened deprivation of rights alleged herein, Jill seeks prospective injunctive relief against Defendants.

179.   There is no adequate remedy at law.

180.   Irreparable injury will continue to occur without this Court's intervention.

181.   The threatened deprivations of constitutional rights outweighs any potential harm to Defendants by enjoining the practices, customs, and policies described herein.

182.   Appropriate injunctive relief in this case would promote justice, further the public interest, and prevent irreversible harm.

Count XXI
Plaintiffs
Declaratory Judgment: Defendants' Practices, Customs, and Policies
Violate Plaintiffs' First Amendment Rights

183.   Defendants enforce and maintain practices, customs, and policies regarding sibling placement, sibling visitation, adult relative caregiver placement, and parental control notwithstanding their knowledge that their practices, customs, and policies cause severe harm to minors in their custody and Plaintiffs who are deprived or are threatened with deprivations of fundamental constitutional rights.

184.   Defendants have been and continue to be deliberately indifferent to Plaintiffs' rights.

185.   A declaration that Defendants' practices, customs, and policies violate Plaintiffs' constitutional rights will end widespread, historic, and ongoing deprivations of rights.

WHEREORE Plaintiffs demand judgment against Defendants and pray for the following relief:

    a.   Prospective injunctive relief, in the form of a preliminary and permanent injunction against Defendants.

    b.   A declaratory judgment that the practices, customs, and policies complained of in this Second Amended Complaint are unconstitutional.

    c.   The entry of an order assessing Plaintiffs' costs and reasonable attorney's fees against the Defendants pursuant to 42 U.S. C. § 1988. And,

    d.   Such other and further relief for Plaintiffs as the Court deems equitable and just.

Dated this 24th day of March, 2023.

*/s/ Karen Gievers*

**Karen Gievers, Esq**.
Florida Bar No.: 262005
P.O. Box 16459
Tallahassee, Florida 32317
PH: 850.570.0425
Kgievers@karengievers.com

/s/ Octavia Brown
**Octavia Brown, Esq**.
Community Law for Families
and Children, PLLC
Florida Bar No.: 0011778
**Valentina Villalobos, Esq.**
Community Law for Families and
Children, PLLC
Florida Bar No.: 100426
3104 N. Armenia Avenue, STE 2
Tampa, Florida 33607
PH: 813.822.3522
FAX: 863.250.8228
Octavia.brown@community-lawyer.com

*And*

/s/ Aaron Rapier
**Aaron Rapier, Esq.**
Rapier Law Firm
*Admitted Pro Hac Vice*
Illinois Bar No. 6270472
1770 Park Street, Suite 200
Napierville, Illinois 60563
PH: 630.853.9224
arapier@rapierlawfirm.com

*Trial Attorneys for Plaintiffs*